Cunha *v.* The Ohio Bell Telephone Company.

(No. 831241—Decided July 10, 1970.)

Common Pleas Court of Cuyahoga County.

*Mr. Moses Krislov,* for plaintiff.
*Messrs. Jones, Day, Cockley & Reavis* and *Mr. John L. Strauch,* for defendant.

Parrino, J.  The plaintiff is a sole proprietor in the business of commercial and industrial sign painting.  The defendant is a public utility corporation engaged in the business of furnishing telephone service to subscribers in this county and state.

In 1965 plaintiff was listed in the alphabetical or white pages directory of the defendant telephone company.  Pursuant to contract between the parties, the plaintiff in 1965 also had a one-half inch paid advertisement in the yellow pages directory under the category of "SIGNS" and a free one line listing under the category of "ADVERTISING-OUTDOOR."

On November 22, 1965, plaintiff and defendant entered into another contract whereby the 1966 directories would contain identical items as those above listed.

The 1966 directories, however, while listing the plaintiff correctly in the white pages and in the free one line ad in the yellow pages, failed to contain the one-half inch yellow page advertisement.

The plaintiff's petition alleges that because of the gross and wanton negligence of the defendant in the omission of this ad, plaintiff has been severely and permanently damaged.

The answer of the defendant is that its liability for an unintentional omission is limited to an amount equal to the agreed price for such advertising, as indicated in paragraph 8 of the agreement between the parties which reads as follows:

"The Telephone Company shall not be liable to the Advertiser for damages resulting from failure to include any item of advertising specified in this agreement in the directory or from errors in the advertising printed in the directory in excess of an amount equal to the agreed price for said item of advertising for the issue in which the error or omission occurs."

The defendant being a public utility and subject to tariffs and schedules approved by the Public Utilities Commission of Ohio is saved harmless from liability for errors and omissions in its white pages directory. *Correll* v. *Ohio Bell Telephone Co.*, 63 Ohio App. 491. It is contended, however, by the defendant that the yellow pages directory is not subject to rate and tariff control by the Public Utilities Commission and is the subject of private contract between the parties. The central question in this case, therefore, is the validity and the enforceability of paragraph 8 of the contract relating to the yellow pages directory only.

The parties to the suit have stipulated the essential issues of this case. It has been agreed that in the event the court decides that paragraph 8 is a valid contractual provision binding the parties, a jury would then be im-

paneled with instructions to render a verdict for the plaintiff in the sum of $117.00, being reimbursement for the cost of the yellow page listing to plaintiff. On the other hand, it was also stipulated that in the event paragraph 8 was declared invalid by this court, then a jury would be impaneled solely to determine plaintiff's total damages.

Plaintiff's principal attacks upon the provisions of paragraph 8 are that plaintiff did not have adequate notice of them and that in any event they are against public policy.

To support his theory of the absence of adequate notice, plaintiff likens his position in the instant case to that of a bailor-bailee relationship found in the case of *Agricultural Ins. Co.* v. *Constantine*, 144 Ohio St. 275, in which syllabus 3 reads as follows:

"Where, at the time of bailment and ostensibly for later identification of the bailed property, a bailee delivers to a bailor a token or receipt upon which conditions are printed purportedly limiting the bailee's liability, such printed conditions become no part of the contract of bailment and the parties remain subject to the usual obligations imposed by law in the absence of anything to indicate that the bailor either expressly or impliedly assented to such printed conditions, prior to or contemporaneously with delivery of the property to the bailee."

In the *Agricultural Ins. Co.* case, the bailor left his car at a parking lot and received a parking ticket from the attendant on the back of which limitations of liability of the bailee were expressed. The court, on page 280 of its opinion, declared:

"The great weight of authority in this country is to the effect that a ticket such as was delivered to this bailor, is a mere token for identification, * * * and printed conditions thereon purportedly limiting the bailee's liability, become no part of the contract, at least in the absence of anything to indicate that the bailor assented to the conditions before delivering the property to the bailee."

The plaintiff cannot now say that he did not read or was not given adequate notice of the express provisions of the contract entered into between the parties. In the case

of *Independent Directory Corp.* v. *Vandenbrock*, 43 O. O. 229, syllabus 1 reads:

"One who signs a contract without first making a reasonable effort to learn what is in it or the identity of the other contracting party, may not in the absence of fraud or mutual mistake avoid that contract or its obligations."

On page 231 of its opinion, the court states as follows:

"A succinct statement of the law is taken from Judge Davis' opinion in *McAdams* v. *McAdams*, 80 Ohio St. 241, quoting from the language of Mr. Justice Hunt in *Upton, Assignee,* v. *Tribilcock*, 91 U. S. 50:

" 'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission * * *.' "

A written contract containing express language limiting the liability of one of the contracting parties is substantially more than "a mere token for identification" received by a bailor leaving his automobile in a bailee's parking lot.

From the foregoing, the court concludes that the plaintiff's contentions of inadequate notice or that he was unaware of the provisions of his signed contract are without merit.

The omission of said advertisement was not the result of willful or wanton misconduct by the defendant or any of its agents or employees. Counsel's stipulations reveal the following to be the fact in this respect:

"The omission of said advertisement from the 1966 yellow pages directory was the result of ordinary negligence on the part of defendant; and said omission was in no way due to any intentional act by defendant or any of its agents or employees, or to any gross negligence, or willful or wanton conduct on the part of defendant or any of its agents or employees."

Plaintiff further contends that defendant is charged with a duty of public service and as such it is against public policy to relieve defendant of liability for the negligence of its employees with relation to the classified directory notwithstanding the contract provisions limiting liability. Many cases have upheld the validity of contracts limiting liability applicable to yellow pages advertising almost identical to the provisions of paragraph 8 in this case. In the case of *Smith* v. *Southern Bell Telephone & Telegraph Co.*, 364 S. W. 2d 959, the court stated as follows:

"Notwithstanding that the declaration in this case contains two counts, as hereinbefore stated, one based upon a breach of contract and the other negligence, we are of the opinion that the proper application of the matters contained in the written and signed contract by the plaintiff in this case, which is similar to the one required of all parties whose classified advertisements are placed within the directory, is a reasonable one, and that it is in no wise against public policy, nor is it a part of the utility business of the company, and that it is within the power of the company and the subscribers to its directory, to make a contract limiting liability for such errors therein."

Similar reasoning was employed by the court in *Mitchell* v. *Southwestern Bell Telephone Co.*, 298 S. W. 2d 520, where the clause in the agreement for yellow pages advertising, like this one, provided that the company's "maximum liability for damages arising out of errors or omission in the directory shall be limited to the amount charged for such directory advertising." The court, in upholding the validity of the clause, distinguished the case before it from the situation presented by a public utility's failure to perform a public duty function (298 S. W. 2d at 524):

"The plaintiffs contend that this clause is invalid and rely upon *Jacobs* v. *Western Union*, 196 Mo. App. 300, 196 S. W. 31. This was an action arising out of defendant's failure to deliver a telegram. It was an action *ex delicto* bottomed on the breach of a public duty wherein the court held that a contractual limitation of liability was invalid. The running of advertisements in the classified section of

a telephone directory is not a public service but a matter of private contract between the subscriber and the telephone company and a contractual limitation of liability for the breach of such a contract is a valid limitation.''

For similar holdings also see *Georges* v. *Pacific Telephone & Telegraph Co.* (D. Ore. 1960), 184 F. Supp. 571; *Neering* v. *Southern Bell Telephone & Telegraph Co.* (S. D. Fla. 1958), 169 F. Supp. 133; *Federal Building Service* v. *Mountain States Telephone & Telegraph Co.* (N. Mex. 1966), 417 Pac. 2d 24; *Wade* v. *Southwestern Bell Telephone Co.* (Tex. Civil App. 1961), 352 S. W. 2d 460.

In 92 A. L. R. 2d 917, at page 940, the following language is found:

''If the particular limitation clause is applicable to erroneous directory listings arising in an area of the company's activities which is deemed to be private in nature—chiefly the area of contracts for advertising or listing in the 'yellow pages' at a charge—rather than in the public domain, such clause is then regarded as immune from attack because it is in the realm of private contract with which the public interest may not interfere where the contract is not against public policy in a broad sense.''

The plaintiff further takes the position that since the defendant is a public utility operating with the sanction of government authority of the state of Ohio any limitation on liability as to the classified directory must also be sanctioned by the proper governmental body or is void.

This point was discussed in the leading case of *McTighe* v. *New England Telephone & Telegraph Co.*, 216 F. 2d 26, in which the court stated as follows at page 27:

''The publication of the classified directory, however, is wholly a matter of private contract and contracts relating thereto are not required to be filed with the Public Service Commission which has no jurisdiction except over matters relating to the public utility services rendered by the company and the rates relative thereto.''

From the foregoing the court concludes that the running of advertisements in the classified or yellow pages section of the telephone directory is not a public service

but is a matter of private contract between a subscriber and the telephone company and that in the absence of fraud, willful or wanton misconduct by the telephone company, its agents or employees, a limitation of liability as to the telephone company expressed in a signed written contract is a valid and binding limitation.

Therefore, pursuant to the stipulations of the parties, a jury will be impaneled with instructions from this court to render a judgment for the plaintiff in the sum of $117.00 representing reimbursement to the plaintiff of the advertising fee paid by him to defendant.

*Judgment accordingly.*