**FRESH CUT, INC. Appellant–Defendant,**

v.

**Bert FAZLI, Appellee–Plaintiff,**

**and**

**State Farm Fire & Casualty Co., Appellee–Plaintiff.**

No. 49A02–9307–CV–334.

Court of Appeals of Indiana, First District.

March 21, 1994.

Rehearing Denied May 18, 1994.

John S. Beeman, Douglas A. Tresslar, Ronald W. Frazier, Harrison & Moberly, Indianapolis, for appellant.

Timothy E. Hollingsworth, James P. Cavanaugh, III, Martin, Wade, Hartley & Hollingsworth, Indianapolis, for appellee.

ROBERTSON, Judge.

Fresh Cut, Inc. appeals the denial of its motion for summary judgment on lessor Bert Fazli's counterclaim for breach of contract. We affirm.

Fresh Cut and State Farm Fire & Casualty Co. sued Fazli in a four-count complaint for damages sustained when, on August 5, 1989, a fire occurred in the portion of the premises leased by Fresh Cut, resulting in considerable damage to the building and its contents.[1] There was no water in the building's sprinkler system on the day of the fire. Fazli avers in his counterclaim against Fresh Cut that under the terms of his lease with Fresh Cut, Fresh Cut had agreed to comply with the law, maintain the premises in good condition, and repair the leased premises, including but not limited to the electrical systems, heating and air conditioning systems, and the structural frame of the building. Thus, Fazli alleges, Fresh Cut had agreed to accept responsibility for the operation of the sprinkler system and that in failing to do so, Fresh Cut breached the terms of the lease.

Fresh Cut argues in its motion for summary judgment and on appeal that the duty imposed by municipal ordinance upon Fazli to maintain the sprinkler system which it alleges as the basis for its suit in negligence against Fazli is nondelegable and therefore, the parties may not shift that duty by contract. To the extent that the parties' agreement attempts to place the duty to ensure that the sprinkler system is operational upon Fresh Cut, the agreement is unenforceable because it is in contravention of the law and violates public policy. In any event, Fresh Cut argues that the lease simply does not place upon Fresh Cut the duty to render the sprinkler system operable.

On appeal from the grant or denial of summary judgment, we use the same standard in ascertaining the propriety of summary judgment as does the trial court. *Newhouse v. Farmers National Bank of Shelbyville* (1989), Ind.App., 532 N.E.2d 26, 28. Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. T.R. 56(H). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Newhouse*, 532 N.E.2d at 28. On appeal, the party which lost in the trial court has the burden of persuading the appellate tribunal that the trial court's decision was erroneous. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189. Whether or not a contract is against public policy is a question of law for the court to determine from all of the circumstances in a particular case. *Stampco Construction Co. v. Guffey* (1991), Ind.App., 572 N.E.2d 510, 513.

A contract is thought to be the product of the free bargaining of the parties. *Weaver v. American Oil Co.* (1970), Ind.App., 261 N.E.2d 99, 103, *superseded,* 257 Ind. 458, 276 N.E.2d 144. As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting and their contracts, when entered into freely and voluntarily, are enforced by the courts. *Id.* This is so because it is in the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract. *Hodnick v. Fidelity Trust Co.* (1932), 96 Ind.App. 342, 350, 183 N.E. 488. Accordingly, the parties to a contract are free to include in the agreement any provisions they desire so long as such provisions do not offend the public policy of this state. *University Casework Systems, Inc. v. Bahre* (1977), 172 Ind.App. 624, 362 N.E.2d 155, 159.

Just as the parties are free to impose new duties upon each other by agree-

---

1. Fresh Cut and State Farm allege in their complaint that Fazli had been notified by the Fire Protection Bureau of the Indianapolis Fire Department that the building's fire protection sprinkler system was inoperable and hence, in violation of the Indiana Fire Prevention Code, yet failed to render the system operable or inform Fresh Cut that the water had not been turned on to the sprinkler system. Fresh Cut and State Farm allege that Fazli's failure or refusal to maintain the sprinkler system in an operable condition constitutes negligence, negligence per se, and reckless and willful conduct, entitling them to punitive or treble damages.

ment, in the absence of legislation to the contrary, they are also generally free to modify existing duties that they owe *each other* as a matter of law. See Restatement (Second) of Contracts § 192 Introductory Note (1979). In Indiana, the parties may agree to cover the risk of harm which may be sustained by third persons by agreeing through an indemnity clause to shift the financial burden from the indemnitee to the indemnitor. As a general rule, indemnification clauses are not void as against public policy, though they will be strictly construed and the intent to indemnify the indemnitee for its own negligence must be stated in clear and unequivocal terms.[2] *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144, 148; *Ogilvie v. Steele* (1983), Ind.App., 452 N.E.2d 167. An indemnification clause in a lease is not void or voidable as against public policy simply because the indemnitee is charged with a nondelegable duty to the public or third persons. In its role as lessor, an indemnitee may rightfully demand as part of the consideration for the lease that its lessee bear the entire financial burden, particularly when the lessee contributes to the risk of loss. *Penn Central Co. v. Youngstown Sheet & Tube Co.* (1969), 146 Ind.App. 216, 253 N.E.2d 704.

■ Similarly, in the absence of legislation, a party can ordinarily contract out of his duty to exercise reasonable care with respect to the other party and thereby exonerate himself of liability to the other for negligence without offending the public policy of this state. This may be done either by an exculpatory clause or an express agreement from the other party to release the promisee from his duty or to assume the risk. *Weaver v. American Oil Co.*, 257 Ind. 458, 276 N.E.2d

144, 148; *Penmanta Corp. v. Hollis* (1988), Ind.App., 520 N.E.2d 120, *trans. denied*; *LaFrenz v. Lake County Fair Board* (1977), 172 Ind.App. 389, 360 N.E.2d 605; *Franklin Fire Ins. Co. v. Noll* (1945), 115 Ind.App. 289, 58 N.E.2d 947. For example, in *Greenhaven Corp. v. Hutchcraft & Associates* (1984), Ind. App., 463 N.E.2d 283, the parties agreed that the architect would be relieved of its obligation to provide its employer with plans which conformed to building codes and ordinances, effectively shifting ultimate responsibility among the parties for compliance to the owner. The agreement to provide nonconforming plans was not in contravention of public policy because the public was protected, regardless of the agreement, by the Fire Marshall who must approve the building for occupancy.

■ These cases as well as those dealing with indemnification clauses establish that an obligee can dispense with a duty in tort established at least in part for his benefit without offending public policy. The fact that the obligee has a nondelegable duty to the public or third parties, alone, does not necessitate the conclusion that between the parties the obligee's duty is nondelegable.[3]

Even so, private agreements have been found to be unenforceable in this state when it is determined that they contravene statutory law, are clearly contrary to what the legislature has declared to be public policy or clearly tend to injure the public in some sort of way. Typically, the statute at issue has either expressly precluded the parties from delegating the performance of the statutory duty or evinced a legislative purpose to protect persons of a particular class, of which the promisor is a member, from their own inability to protect themselves. In *Meehan*

---

**2.** Certain indemnification clauses in design or construction contracts are expressly prohibited by statute. See Ind.Code 26–2–5–1.

**3.** Several Indiana cases hold that a contractee cannot delegate a statutory duty to an independent contractor and then be released from liability to a third party in the event the independent contractor fails to perform that duty. *See e.g. Perryman v. Huber, Hunt & Nichols, Inc.*, (filed Feb. 14, 1994) Ind.App. No. 73A04–9309–CV–327; *Massengill v. Indiana National Bank* (1990), Ind.App., 550 N.E.2d 97, 99; *Stevens v. Thompson* (1988), Ind.App., 525 N.E.2d 353; *Jones v.*

*City of Logansport* (1982), Ind.App., 436 N.E.2d 1138; *Allison v. Huber, Hunt & Nichols, Inc.* (1977), 173 Ind.App. 41, 362 N.E.2d 193 (holding that a party may accept by contract or have imposed upon him by a statute a duty of care for the safety of third persons that is not abrogated in the presence of an intervening independent contractor). *City of Anderson v. Fleming* (1903), 160 Ind. 597, 67 N.E. 443, holds that the delegation of the performance of a common law duty does not relieve the promisee of potential tort liability to third persons.

*v. Meehan* (1981), Ind., 425 N.E.2d 157, 160, the Indiana Supreme Court applied the rule, that the parties to an agreement cannot enforce terms which contravene statutory law, to an attempt by the parties to contractually settle their child support obligations. Notably, in that case, the legislature had acted to protect the interests of minor children unable to protect themselves by expressly limiting the contractual capacity of the parties to finally settle child support obligations. In *Guffey*, 572 N.E.2d 510, the court held a contract exempting an employer from the dictates of a prevailing wage statute which had been enacted as a means of protecting employees who were forced by economic pressures to accept substandard wages to be violative of the public policy furthered by the legislation. Of like nature is *Noble v. Alis* (1985), Ind.App., 474 N.E.2d 109, *trans. denied,* where the ordinance at issue, by its occupancy permit requirements, was designed to protect the leasing public from substandard housing and the lessees had unwittingly exempted the lessor from her statutory obligation without having obtained any consideration for their bargain.[4]

▮ Neither the designated portions of the Indiana Fire Prevention Code as adopted by the Indiana Fire Prevention and Building Safety Commission, 675 IAC 22–2–1, nor the ordinance at issue, the Indianapolis–Marion County Fire Prevention Code, which incorporates Chapter 13 of the National Fire Prevention Association Standards, explicitly prohibits a lessor from requiring performance of the duty imposed by ordinance from the lessee or makes such promises unenforceable; neither does either regulation impose a penalty for so contracting. The contract therefore is not on its face either in violation of statute or illegal and does not call for the performance of an act prohibited by statute. *Cf. Kaszuba v. Zientara* (1987), Ind., 506 N.E.2d 1. Section 1–5.1 of Chapter 13 of the NFPA does state that the owner is responsible for the condition of the sprinkler system and shall use due diligence in keeping the system in good operating condition. Accordingly, we consider whether the lease, by shifting responsibility for the condition of the sprinkler system from the owner to the lessee implicitly contravenes the legislative intent or requires something to be done which adversely affects the public welfare. We do so by engaging in a balancing test by which we evaluate the nature of the subject matter of the contract, the strength of the public policy underlying the statute, the likelihood that refusal to enforce the bargain or term will further that policy and how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain. *Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, 975, *trans. denied; Alis,* 474 N.E.2d 109, 111. We must also weigh in the balance the parties' freedom to contract. *Allstate Ins. Co. v. Boles* (1985), Ind., 481 N.E.2d 1096.

Like the ordinance at issue in *Alis,* the adoption of the National Fire Prevention Code was plainly intended to protect the public and commercial lessees from the dangers associated with fire. But, here, there is no evidence of inequity in bargaining power as might have existed with residential lessees and no apparent need to protect Fresh Cut or State Farm as both counterclaim defendants plainly have the ability to protect themselves in the transaction. Moreover, by allocating the responsibility for maintaining the sprinkler system among the parties, the parties had a meeting of the minds over who would bear the risk of loss occasioned by an inoperable sprinkler system and Fresh Cut's agreement to accept the risk was part of the consideration for Fazli's agreement to rent the premises to Fresh Cut. The public welfare is not adversely affected by the parties' apportionment of the loss; third persons still have recourse to Fazli in tort for their damages. Hence, there is little if any likelihood that our refusal to enforce the parties' bargain will further the underlying policy of the

4. On first blush, *Hatfield v. LaCharmant Home Owners Association* (1984), Ind.App., 469 N.E.2d 1218, *trans. denied,* appears to be the exception to this implicit rule but a close reading of the case reveals that the "agreement" between the developers and homeowners' association, i.e. the declarations and bylaws, did not provide the developers with an exemption from common expense assessments on their uncompleted units. The statement which follows concerning the effect of such an exemption is therefore merely dicta and hence not controlling precedent.

ordinance. Moreover, Fazli will suffer a serious forfeiture which depending upon the resolution of disputed questions of fact, he may not have deserved, as a jury might determine that both parties had knowledge of the inoperable condition of the sprinkler system and both had the ability to prevent the loss which did occur by turning on the water to the system.

■ Hence, we conclude that the parties' agreement to place responsibility on Fresh Cut for maintaining the sprinkler system does not outweigh the public policy which generally favors the freedom to contract. It is only in those cases that are substantially free from doubt that this court will exercise its power to declare a contract void as contravening public policy. *Mathas,* 538 N.E.2d at 974–5. We are therefore not persuaded that the trial court reached an erroneous conclusion on this issue.

■ Fresh Cut urges in the alternative that the lease simply does not impose a contractual duty upon Fresh Cut to maintain the sprinkler system because the lease does not expressly address the sprinkler system. Those portions of the lease designated by Fazli (R. 957) provide:

> 5. ... Lessee shall not use the leased premises or fail to maintain them in any manner constituting a violation of any ordinance, statute, regulations or order of any governmental authority, including but not limited to zoning ordinances so as to interfere with the business of other tenants, nor will lessee maintain or permit any nuisance to occur on the leased premises. The lessee covenants and agrees that the lessee will use, maintain and occupy the leased premises in a careful, safe and proper manner and will not commit waste thereon. ...

> 6. *Maintenance and Repairs.* During the terms (sic) of this lease, the lessee shall, at his own cost and expense, maintain in good condition and repair the leased premises, including but not limited to the electrical systems, heating and air conditioning systems, ... structural frame of the building of which leased premises are a part. Lessee shall also maintain in good repair all interior walls and floors.

We agree with Fazli the terms of the lease unambiguously place responsibility for keeping all of the leased premises, including the sprinkler system, in proper operating condition upon Fresh Cut. The language of the lease is virtually the same as that used in the municipal ordinance to describe the responsibility of the owner under the fire prevention code. If the language of a contract is clear, it must be given its plain meaning. *Boles,* 481 N.E.2d at 1101. Moreover, paragraph five of the lease plainly states that Fresh Cut's duty to maintain the leased premises in good condition requires it to keep the premises in a condition which conforms with the requirements of all ordinances, statutes, regulations and orders of local authorities.

Fresh Cut has not demonstrated that it is entitled to a judgment as a matter of law. The trial court therefore properly concluded that Fresh Cut was not entitled to a summary judgment.

Judgment affirmed.

BAKER and SULLIVAN, JJ., concur.