PINNACLE COMPUTER SERVICES,
INC., Appellant–Plaintiff,

v.

AMERITECH PUBLISHING, INC.,
Appellee–Defendant.

No. 82A01–9407–CV–213.

Court of Appeals of Indiana,
First District.

Nov. 28, 1994.

Rehearing Denied Feb. 23, 1995.

Katharine Vanost Jones, Evansville, for appellant.

F. Wesley Bowers, David E. Gray, Bowers, Harrison, Kent & Miller, Evansville, for appellee.

## OPINION

BAKER, Judge.

Today we re-examine whether the exculpatory provision in an advertising contract limiting the publisher's liability to an amount equal to the contract price or the sum of money actually paid for the advertising, is unconscionable. A panel of this court recently addressed this issue in *Pigman v. Ameritech Publishing, Inc.* (1994), Ind.App., 641 N.E.2d 1026. The *Pigman* decision joined a minority of jurisdictions in holding that the exculpatory clause is unconscionable and void as against public policy as a matter of law. *Pigman*, 641 N.E.2d at 1035. Appellant-plaintiff Pinnacle Computer Services, Inc. (Pinnacle) appeals the summary judgment granted in favor of appellee-defendant Ameritech Publishing, Inc. (Ameritech), upholding the validity of the exculpatory clause.

### FACTS

Pinnacle engages in the sale, repair and installation of computer related equipment. On August 30, 1992, Ameritech sales representative, Susan Exmeyer, met with Brian Ricci, Pinnacle's president, to discuss Pinnacle's advertising listing in the 1993 Ameritech Pages Plus directories (Yellow Pages). At that meeting, Exmeyer and Ricci reviewed and made various notations on a copy of Pinnacle's 1992 Directory Advertising Order. After reviewing those notations, Ricci signed the bottom of that order to place a 1993 listing.

Pinnacle's order provided that a four-quarter column page advertisement would be printed in the "Computer and Computer Equipment—Services and Repair" section of the Yellow Pages. However, when the 1993 Yellow Pages was published, Pinnacle's display ad was mistakenly omitted from that section and was instead printed under the heading "Computers—System Designers and Consultants."

Pinnacle filed its complaint for damages against Ameritech with the Vanderburgh Superior Court on March 25, 1993. Ameritech filed a motion for summary judgment alleging that its advertising liability was limited, pursuant to the limitation of liability clause contained in the order, to an amount equal to the contract price for the disputed advertisements, or the sum of money actually paid toward the disputed advertisements.

After a hearing on Ameritech's motion, the trial court issued a March 14, 1994, order that granted Ameritech's motion for summary judgment and in pertinent part provided:

7. The Directory Advertising Order contains the following provision which expressly and plainly limits Ameritech advertising's liability for errors and omissions in the providing of advertising services to the amount it received from the advertiser for such services.

*PUBLISHER'S LIABILITY:* ... IF PUBLISHER SHOULD BE FOUND LIABLE FOR LOSS OR DAMAGE DUE TO A FAILURE ON THE PART OF THE PUBLISHER OR IT DIRECTLY, IN ANY RESPECT, REGARDLESS OF WHETHER CUSTOMER'S CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, THE LIABILITY SHALL BE LIMITED TO AN AMOUNT EQUAL TO THE CONTRACT PRICE FOR THE DISPUTED ADVERTISEMENTS, OR THAT SUM OF MONEY ACTUALLY PAID BY THE CUSTOMER TOWARD THE DISPUTED ADVERTISEMENTS, WHICHEVER SUM SHALL BE LESS, AS LIQUIDATED DAMAGES AND NOT AS A PENALTY, AND THIS LIABILITY SHALL BE EXCLUSIVE. IN NO EVENT SHALL PUBLISHER BE LIABLE FOR ANY LOSS OF CUSTOMER'S BUSINESS,

REVENUES, PROFITS, THE COST TO THE CUSTOMER OF OTHER ADVERTISEMENTS OR ANY OTHER SPECIAL INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY NATURE, OR FOR ANY CLAIM AGAINST THE CUSTOMER BY A THIRD PARTY ...

8. Pinnacle, through Brian Ricci, further acknowledged the "Publisher Liability" clause—by signing the Directory Advertising Order on the customer signature line which is located directly below the following clause:

I have read and understand the terms and conditions on the face and reverse side, particularly the paragraph which limits my remedies and publisher's maximum liability in the event of error or omission.

9. Ameritech advertising has not sought to recover, and Pinnacle is not obligated to pay, nor has it paid for any advertising in the 1993 Directory.

10. Because Ameritech advertising's liability is limited to an amount equal to the contract price for the disputed advertisements, or the sum of money actually paid toward the disputed advertisements, whichever sum shall be less, Pinnacle is not entitled to recover for any damages because Pinnacle has not paid for any advertising in the 1993 Directory.

Record at 141–44.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. We consider the pleadings and evidence designated under Ind.Trial Rule 56(C) without determining their weight or credibility. *Board of Trustees v. Landry* (1993), Ind. App., 622 N.E.2d 1019, 1021. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.;* T.R. 56(C). We will not weigh the evidence and will consider the facts in the light most favorable to the non-moving party. *Collins*, 604 N.E.2d at 1194.

### II. Summary Judgment

Pinnacle first contends that the trial court erred in granting Ameritech's motion for summary judgment because a genuine issue of material fact exists as to whether the parties mutually assented to the exculpatory provision.

A mutual assent or a meeting of the minds on all essential elements or terms must exist in order to form a binding contract. *Carr v. Hoosier Photo Supplies, Inc.* (1982), Ind., 441 N.E.2d 450, 455. Assent to the terms of a contract may be expressed by acts which manifest acceptance. *State v. Daily Exp., Inc.* (1984), Ind.App., 465 N.E.2d 764, 767.

In the case at bar, Brian Ricci, Pinnacle's president and agent, signed Ameritech's order on the customer signature line located directly below the following clause:

I have read and understand the terms and conditions on the face and reverse side, particularly the paragraph which limits my remedies and publisher's maximum liability in the event of error or omission.

R. at 144. By its agent's act of signing the contract, Pinnacle assented to its terms and the trial court did not err in finding that there were no genuine issues as to any material fact and that Ameritech was entitled to judgment as a matter of law. *See Sink & Edwards, Inc. v. Huber, Hunt & Nichols* (1984), Ind.App., 458 N.E.2d 291, 296.

### III. Exculpatory Provision

Next, Pinnacle argues that Ameritech's exculpatory damage clause is unconscionable and should be held invalid, unenforceable and against public policy.

A contract is thought to be the product of the free bargaining of the parties. *Fresh Cut, Inc. v. Fazli* (1994), Ind.App., 630 N.E.2d 575, 577. As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting and their contracts, when entered into

freely and voluntarily, are enforced by the courts. *Id.* This is so because it is in the best interest of the public that persons should not be unnecessarily restricted in their freedom of contract. *Id.* Accordingly, the parties to a contract are free to include in the agreement any provisions they desire so long as such provisions do not offend the public policy of this state. *Id.*

■ In the absence of legislation, a party may contract out of his duty to exercise reasonable care with respect to the other party and thereby exonerate himself of liability to the other for negligence without offending the public policy of the state. *Id.* at 578. This may be done by an exculpatory clause or an express agreement from the other party to release the promisee from his duty or to assume the risk. *Id.*

■ Although no public policy exists to prevent contracts containing exculpatory clauses, some exceptions do exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public. *General*

*Bargain Center v. American Alarm Co.* (1982), Ind.App., 430 N.E.2d 407, 411–12. Absent the exceptions mentioned above, however, such agreements are enforceable. *Id.* at 412.

The enforceability of an exculpatory clause in a Yellow Pages advertising contract was recently addressed by this court in *Pigman v. Ameritech Publishing, Inc.* (1994), Ind. App., 641 N.E.2d 1026. The *Pigman* decision joined a minority of jurisdictions in holding that the exculpatory clause contained in Ameritech's Yellow Pages advertising contract is unconscionable and void as against public policy as a matter of law. *Pigman,* 641 N.E.2d at 1035. However, authorities cited by Pinnacle and Ameritech and through our own research indicate that a majority of tribunals in other states that have addressed this issue have upheld the validity of such clauses.[1]

## IV. Other Jurisdictions

In *University Hills Beauty Acad., Inc. v. Mountain States Tel. & Tel. Co.* (1976), 38 Colo.App. 194, 554 P.2d 723, the Colorado Court of Appeals upheld an exculpatory clause in a Yellow Pages advertising contract against challenges that it was unconscionable and against public policy. The Beauty Acad-

1. *Mendel v. Mountain States Tel. & Tel. Co.* (1977), 117 Ariz. 491, 573 P.2d 891; *Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co.* (W.D.Ark.1973), 366 F.Supp. 307; *Davidian v. Pacific Tel. & Tel. Co.* (1971), 16 Cal.App.3d 750, 94 Cal.Rptr 337; *University Hills Beauty Acad., Inc. v. Mountain States Tel. & Tel. Co.* (1976), 38 Colo.App. 194, 554 P.2d 723; *Ed Fine Oldsmobile, Inc. v. Diamond State Tel. Co.* (1985), Del., 494 A.2d 636; *Neering v. Southern Bell Tel. Co.* (S.D.Fla.1958), 169 F.Supp. 133; *Southern Bell Tel. & Tel. Co. v. C & S Realty Co.* (1977), 141 Ga.App. 216, 233 S.E.2d 9 (overruled in part on other grounds); *Georgia–Carolina Brick and Tile Co. v. Brown* (1980), 153 Ga.App. 747, 266 S.E.2d 531; *McClure Engineering Assocs., Inc. v. Reuben H. Donnelley Corp.* (1983), 95 Ill.2d 68, 69 Ill.Dec. 183, 447 N.E.2d 400; *Woodburn v. Northwestern Bell Tel. Co.* (1979), Iowa, 275 N.W.2d 403; *Holman v. Southwestern Bell Tel. Co.* (D.Kan.1973), 358 F.Supp 727; *Louisville Bear Safety Serv., Inc. v. South Cent. Bell Tel. Co.* (1978), Ky.App., 571 S.W.2d 438; *Wilson v. Southern Bell Tel. & Tel. Co.* (1967), La.App., 194 So.2d 739; *Baird v. Chesapeake and Potomac Tel. Co.* (1955), 208 Md. 245, 117 A.2d 873; *Warner v. Southwestern Bell Tel. Co.* (1968), Mo., 428 S.W.2d 596; *Montana ex rel. Mountain States*

*Tel. & Tel. Co.* (1972), 160 Mont. 443, 503 P.2d 526; *Bernstein v. G.T.E. Directories Corp.* (D.Nev. 1986), 631 F.Supp. 1551; *PK's Landscaping v. New England Tel. & Tel. Co.* (1986), 128 N.H. 753, 519 A.2d 285; *Federal Building Serv. v. Mountain States Tel. & Tel. Co.* (1966), 76 N.M. 524, 417 P.2d 24; *Hamilton Employment Serv. v. New York Tel. Co.* (1930), 253 N.Y. 468, 171 N.E. 710; *Gas House v. Southern Bell Tel. & Tel. Co.* (1976), 289 N.C. 175, 221 S.E.2d 499; *North Carolina ex rel. Utilities Comm. v. Southern Bell Tel. & Tel. Co.* (1983), 307 N.C. 541, 299 S.E.2d 763; *Cunha v. Ohio Bell Tel. Co.* (1970), 26 Ohio Misc. 267, 55 O.O.2d 430, 271 N.E.2d 321; *Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co.* (W.D.Okla.1967), 279 F.Supp. 712; *Georges v. Pacific Tel. & Tel. Co.* (D.Ore.1960), 184 F.Supp. 571; *Behrend v. Bell Tel. Co. of Pa.* (1978), 257 Pa.Super. 35, 390 A.2d 233; *Pride v. Southern Bell Tel. & Tel. Co.* (1964), 244 S.C. 615, 138 S.E.2d 155; *Smith v. Southern Bell Tel. & Tel. Co.* (1962), 51 Tenn.App. 146, 364 S.W.2d 952; *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.* (1985), Utah, 709 P.2d 330; *McTighe v. New England Tel. & Tel. Co.* (2d Cir.1954), 216 F.2d 26; *Allen v. General Tel. Co. of the Northwest* (1978), 20 Wash.App. 144, 578 P.2d 1333.

emy sued Mountain Bell for loss of business profits and expenses resulting from the negligent omission of its listing under the heading "Beauty Schools" in the Yellow Pages published by Mountain Bell. *Id.* at 724. Although Mountain Bell admitted that due to a computer error, the listing appeared in the Yellow Pages under the heading "Beauty Salons," it claimed that its liability was limited by an exculpatory clause in the advertising contract similar to the one here.

In upholding the exculpatory clause, the Colorado Court of Appeals stated:

> People should be entitled to contract on their own terms without the indulgence of paternalism by the courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Id.* at 726 (citing *Carlson v. Hamilton* (1958), 8 Utah 2d 272, 332 P.2d 989).

The court reasoned that the enforcement of the limitation of liability clause did not lead to a result so unreasonable as to shock the conscience because there were other directories and publications in which the plaintiff could have chosen and did advertise. *Id.* It further stated:

> The inequality of bargaining power between the telephone company and the businessmen desiring advertising in the yellow pages directory is more apparent than real. It is not different from that which exists in any other case in which a potential seller is the only supplier of the particular article or service desired. There are many other modes of advertising to which the businessman may turn if the contract offered to him by the telephone company is not attractive.

*Id.*

Moreover, the court surmised that if it were to void the provision of the contract, it would make the telephone company an insurer against consequential damages by advertisers, contrary to the law which has traditionally been applied to telephone and telegraph companies. *Id.* The court further reasoned that to make the telephone company an insurer would be grossly inequitable:

> The "premiums," in the form of advertising billings, for such "insurance," in the form of unlimited liability for consequential damages, are disproportionately low when compared to the magnitude of potential liability, and the rates are obviously based on the limited liability created by the clause in question.

*Id.*

Similarly, in *Louisville Bear Safety Serv., Inc. v. South Cent. Bell Tel.* (Ky.Ct.App. 1978), 571 S.W.2d 438, our neighbors to the south, the Kentucky Court of Appeals, upheld an exculpatory clause in a Yellow Pages advertising contract against an attack that it was unconscionable. The court declared:

> It is quite true that telephone companies are generally monopolies in each service area and that the Yellow Pages are a unique advertising device for which there is no practical substitute, but the situation here is not one of an uninformed consumer and a coercive or fraudulent company. Bear safety had been in the business and placing ads in the Yellow Pages for many years and was operating from the status of a knowledgeable businessman.

*Id.* at 439–40.

Bear Safety did not allege that it was unaware of or did not understand the exculpatory clause when it entered into the contract with South Central Bell. Although it may have had no alternative that would provide exactly the same service at comparable cost, there were other means of advertisement available. *Id.* The court also noted that the fact that South Central Bell is able to limit its liability through the use of this clause probably contributes to the comparatively low cost of the ads. *Id.*

Also, in *Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co.* (D.C.Ark.1973),

366 F.Supp. 307, the United States District Court for the western district of Arkansas upheld an exculpatory clause in a Yellow Pages advertising contract against an unconscionability attack because it was in a preprinted form contract and was entered into by parties in disparate bargaining positions. It announced:

> The Yellow Pages is but one form of advertising. It is in no way unique or monopolistic. Numerous alternative advertising forums exist. Moreover, the disparity of bargaining power claimed to exist in the instant case is no more than is generally found to exist in commercial transactions. The court perceives its responsibility to strike down such a clause to arise only upon a clear showing of palpable unfair and overreaching language or conduct on the part of the defendant. The present clause represents nothing more than an application of a basic concept of contract law which recognizes the propriety of parties contracting to limit their liability.

*Id.* at 310. The court's reasoning was:

> The power of the courts to declare a contract void for being in contravention of public policy is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.

*Id.* at 311 (citing *Sirman v. Sloss Realty Co.* (1939), 198 Ark. 534, 129 S.W.2d 602).

Moreover, in *Ed Fine Oldsmobile, Inc. v. Diamond State Tel. Co.* (Del.1985), 494 A.2d 636, the Delaware Supreme Court, in upholding an exculpatory clause in a directory advertising contract, stated that the public policy behind such a clause is based on the notion that such limitations will allow the telephone company to charge reasonable rates. *Id.* at 638.

▪ We find the majority view to be persuasive and decline to follow *Pigman.* Now, we turn to the task of applying the reasoning of the majority view to the case at hand.

### V. Ameritech's Exculpatory Provision

Pinnacle contends that, contrary to the holdings in the above cited cases, the exculpatory clause in Ameritech's Yellow Pages contract is unenforceable because: 1) the parties had unequal bargaining power, 2) the clause was unconscionable, and 3) the transaction affected the public interest. *See General Bargain Center,* 430 N.E.2d at 411–12. We disagree and join the majority of jurisdictions in holding that the exculpatory clause is enforceable.

### A. Unequal Bargaining Power

First, Pinnacle contends that the exculpatory provision is unenforceable because it was in a preprinted form contract, entered into by parties with disparate bargaining positions. However, a standardized contract is not unenforceable merely because of the unequal bargaining power of the parties. *Rumple v. Bloomington Hospital* (1981), Ind. App., 422 N.E.2d 1309, 1313, *trans. denied.* There must also be a showing that the contract is unconscionable. *Id.* A contract will be held void as against public policy only where one party is at such a disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence. *LaFrenz v. Lake City Fair Board* (1977), 172 Ind.App. 389, 393, 360 N.E.2d 605, 608.

In the present case, we recognize that Ameritech publishes the only Yellow Pages directory distributed in Evansville, Indiana, and that the Yellow Pages are a unique advertising device. However, despite Ameritech's greater bargaining power, the situation here was not one of an uninformed consumer and a coercive fraudulent company. *See Louisville Bear Safety,* 571 S.W.2d at 439–40. The record reveals that Pinnacle has placed advertisements in Ameritech's Yellow Pages for the past several years. Pinnacle now contends, however, that the exculpatory provision is unenforceable because "the terms and conditions on the back of the preprinted form were pre-determined by Ameritech and were neither discussed nor negotiable." Appellant's Brief at 16. Ricci, however, never attempted to discuss or negotiate the terms and conditions of the order. Moreover, Ricci does not assert that he was placed in a "take it or leave it" position in that he had no choice but to accept the limitation of liability terms of the contract.

Pinnacle also argues that it was unaware of the exculpatory clause because Ameritech representative, Exmeyer, kept the contract in her possession throughout their meeting and never discussed the exculpatory clause with Ricci. Again, Ricci does not claim that he even attempted to read or discuss the terms of the order with Exmeyer before he signed it. Nothing in the record suggests that Ricci was prevented or distracted from examining the contract, that its terms and conditions were misrepresented to him, or that he was misled in any way. Ricci signed the order on the customer signature line located directly below the following clause:

> I have read and understand the terms and conditions on the face and reverse side, particularly the paragraph which limits my remedies and publisher's maximum liability in the event of error or omission.

R. at 144. A court cannot relieve a party from the terms of a contract because of his failure to read all or part of it, as he is bound to know the contents of the contract which he signs. *Walb Const. Co. v. Chipman* (1931), 202 Ind. 434, 443, 175 N.E. 132, 135.

Nothing in the designated materials in this case has shown that Pinnacle should be exempt from this general rule. Consequently, despite Ameritech's greater bargaining power, Pinnacle has not demonstrated that it was an uninformed consumer dealing with a coercive fraudulent company. *See Louisville Bear Safety*, 571 S.W.2d at 439–40.

### B. *Unconsciability*

■ As a general rule, a contract may be declared unenforceable due to unconscionability when there is a great disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly and unaware of its terms. *Weaver v. American Oil* (1971), 257 Ind. 458, 464, 276 N.E.2d 144, 146. In addition, the contract must be one that no sensible person not under delusion, duress or in distress would make, and one that no honest and fair person would accept. *Id.*

In *Weaver*, our supreme court held that an exculpatory clause in a service station lease was unconscionable and unenforceable. Each year Weaver, a man with only one and one-half years of high school education, was presented a printed lease by an agent of American Oil and was told to sign it. *Id.* Weaver never read the lease, and the lease, which had been drafted by attorneys for American Oil, was not explained to him prior to his signing it. *Id.* Moreover, the clause was in fine print, contained no title heading and indemnified Amoco Oil against its own negligence. *Id.*

Pinnacle argues that Ameritech's exculpatory clause, which was on the back of a pre-printed form prepared by Ameritech, is similar to the clause in *Weaver* and is likewise unconscionable and unenforceable. We disagree.

Unlike the facts in *Weaver*, Ricci is not a man with a limited high school education. It is uncontroverted that he is the president of a company that is engaged in the sale, repair and installation of computer related equipment. Although Ricci alleges that the order was not explained to him prior to signing it, he had the ability, unlike Weaver, to read and understand the significance of the exculpatory clause. He is hardly in a position comparable to that of the plaintiff in *Weaver*.

Moreover, unlike *Weaver*, the exculpatory clause on the back of the order was titled "PUBLISHER LIABILITY" and was printed in a manner designed to emphasize its most crucial provisions. Also, unlike *Weaver*, Ameritech's exculpatory clause limited its liability for its own negligence, but it did not compel Pinnacle to indemnify it for any damages or loss incurred as a result of Ameritech's negligence.

Nothing in the designated matters in this case demonstrates that Ameritech's contract was one that no sensible person not under delusion, duress or in distress would make, and that no honest and fair person would accept.

### C. *Public Interest*

Although no public policy exists to prevent contracts containing exculpatory clauses, an exception exists where the transaction affects the public interest such as public utilities, common carriers, innkeepers and public

warehousemen and situations where the indispensable need of one party for the services of another deprives the customer of all real equal bargaining power. *LaFrenz*, 360 N.E.2d at 608. Pinnacle contends that Ameritech's exculpatory clause falls within this exception. We disagree.

Although Ameritech Publishing is a wholly owned subsidiary of Ameritech, Inc., a company which owns Indiana Bell Telephone Company, Incorporated, and is subject to regulation by the Indiana Utility Regulatory Commission, *see Pigman*, 641 N.E.2d at 1033, it is, nevertheless, a separate legal entity and not a public utility. The publication of the Yellow Pages in a telephone directory is wholly a matter of private concern. *See University Hills*, 554 P.2d at 725.

The North Carolina Supreme Court addressed this issue in *Gas House, Inc. v. Southern Bell Tel. & Tel. Co.* (1976), 289 N.C. 175, 221 S.E.2d 499, when it stated:

> The reason for the rule that a common carrier, or other public utility, may not contract away its liability for negligence in the performance of its public utility service and may not claim the benefit of an unreasonable contract limiting the amount of its liability therefor, is that every member of the public is entitled by law to demand such service with full liability at a reasonable rate therefor. For the company to refuse to serve unless the customer agrees to release it from liability for its negligent performance of its obligation to serve would be a denial of this legal right in the would-be customer. Thus, such a contract limiting the liability of the carrier, or other public utility, unless reasonable, is contrary to public policy and is invalid. This limitation upon the right of the common carrier, or other public utility, to contract applies however, only to its undertakings to render services which fall within its public service business ... and the business of carrying advertisements in the Yellow Pages of its directory is not part of a telephone company's public utility business.

221 S.E.2d at 505.

The inequality of bargaining power between the telephone company and the businessman desiring to advertise in the Yellow Pages is more apparent than real. *Id.* It is no more than is generally found to exist in commercial transactions. *See Robinson Ins.*, 366 F.Supp. 307. It is no different from that which exists in any other case in which a potential seller is the only supplier of the particular article or service desired. *See Gas House*, 221 S.E.2d at 505. Although Pinnacle may have had no alternative that would have provided exactly the same service at comparable cost, there were other means of advertisement available. *See id.* An abundance of radio, television and print advertising was available to meet Pinnacle's advertising needs. In fact, in 1993, Pinnacle spent $26,000 on alternative forms of advertising. R. at 109.

Moreover, if we were to avoid the exculpatory clause in Ameritech's order, it would make Ameritech an insurer against consequential damages by advertisers. *See id.* As the Colorado Court of Appeals recognized:

> The "premiums," in the form of advertising billings, "for such insurance," in the form of unlimited liability for consequential damages, are disproportionately low when compared to the magnitude of potential liability, and the rates are obviously based on the limited liability created by the clause in question.

*University Hills*, 554 P.2d at 724.

Also, it would be virtually, if not completely, impossible to determine what portion of the business done by an advertiser is attributable to its use of Yellow Pages advertising. *See Gas House*, 221 S.E.2d at 505. There are many factors which enter into periodic fluctuations ·in the volume of business done by a seller of goods or services. *See id.* The purpose of the limitation of liability clause is to protect Ameritech from the danger of verdicts primarily speculative in amount. In this respect, Ameritech is not in a different position from the local newspaper, radio or television station, or other advertising media.

Following this reasoning, we find no basis in the designated materials to conclude that Ameritech's exculpatory clause in its Yellow

Pages advertising contract affected the public interest.

### VI. Conclusion

We conclude that, in the present case, the exculpatory clause in Ameritech's Yellow Pages order is valid and enforceable. However, we caution Ameritech that although the limitation of liability clause is valid in this case, there are limits to the enforceability of such clauses. We can envision circumstances in which the exculpatory clause would be unconscionable because of unequal bargaining power between parties or misrepresentations of the terms of the advertising order. Because we find no such circumstances exist in this case, we affirm the trial court's order granting summary judgment in favor of Ameritech.

Judgment affirmed.

FRIEDLANDER, J., concurs.

ROBERTSON, J., dissents with separate opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent for the reasons stated in *Pigman v. Ameritech Publishing, Inc.,* 641 N.E.2d 1026 (Ind.App., 1994).