Elizabeth A. CLARK, individually, and Elizabeth A. Clark, as Personal representative of The Estate of June Christy Highsaw, Plaintiffs,

v.

James M. DONAHUE, M.D., Ruth Stanley, Carolyn Mott, R.N., Joyce Currens, R.N., Garner Johnson, and Obie Turner, Defendants.

Annabelle WOODS, by her Guardian Sandra SCHAFFER, and Norma Shane, as Personal Representative of The Estate of Lydia Kay Shelby, Plaintiffs,

v.

James M. DONAHUE, M.D., Ruth Stanley, Joyce Currens, R.N., Nasser M. Shinwarie and Paula Smith, Defendants.

Nos. IP 92–237–C–B/S, IP 92–238–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 31, 1995.

C. Dennis Wegner, C. Dennis Wegner & Assoc., P.C., Indianapolis, IN, for plaintiffs.

John Laramore, Deputy Atty. Gen., John T. Hume, III, Randall C. Helmen, Hume Smith Geddes & Green, Bruce L. Kamplain, Norris Choplin & Schroeder, Indianapolis, IN, for defendants.

## CONSOLIDATED ENTRY

BARKER, Chief Judge.

These two cases involve claims based upon the deaths of two patients at Central State Hospital. Currently before the Court are various defense motions for summary judgment. For the reasons stated below, the motions are denied.

### I. Background

June Christy Highsaw was admitted to Central State Hospital ("CSH") in July, 1970, as a result of a voluntary admission agreement signed by her mother, Elizabeth Clark. At the time she was admitted, Highsaw was approximately 14 years old. Highsaw died at the age of 35 while still a patient at CSH. Lydia Kay Shelby was admitted to CSH in December, 1971, at the age of approximately 15 years old. Shelby remained at CSH until her death at 40 years of age. Plaintiffs allege that Highsaw and Shelby died as the result of severe medical and physical mistreatment.

### II. Discussion

Defendants James M. Donahue, M.D., Garner Johnson, Obie Turner, Ruth Stanley, and Paula Smith (collectively, "Defendants") argue that they are entitled to summary judg-

ment on Plaintiffs' claims because Plaintiffs were not involuntarily admitted to CSH. That is, Defendants contend that voluntarily admitted mental patients have no substantive due process rights to be protected from mistreatment while patients at a state hospital. Additionally, Defendants assert that they are entitled to summary judgment in the Highsaw case because Highsaw's mother, Elizabeth Clark, signed a "hold harmless agreement" at the time Highsaw was committed to CSH.

■ Summary judgment is proper where:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment should be denied. *See Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir.1993); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989).

■ Defendants base their main argument on *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), and its progeny. *DeShaney* addresses the duty of the state "to protect the life, liberty, and property of its citizens against invasion by private actors." 489 U.S. at 195, 109 S.Ct. at 1003. At issue in *DeShaney* is under what "circumstances the Constitution imposes upon the State affirmative duties of care and protection with

respect to certain individuals" such that the state is obligated to protect such individuals from themselves and others (i.e., non-state actors). *DeShaney* concludes that the state does owe such a duty where certain " 'special relationships' [are] created or assumed by the State with respect to particular individuals." *Id.* at 197, 109 S.Ct. at 1004.

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause....

*Id.* at 200, 109 S.Ct. at 1006. Therefore, the "special relationships" exist with respect to incarcerated prisoners and involuntarily committed mental patients. *Id.* at 199, 109 S.Ct. at 1005 (citations omitted).

Relying on *DeShaney*, several courts have held that voluntarily committed mental patients are not owed any constitutional duty to substantive due process rights by the state. *See, e.g., Monahan v. Dorchester Counseling Center, Inc.*, 770 F.Supp. 43 (D.Mass.1991), *aff'd*, 961 F.2d 987 (1st Cir.1992) (claims of voluntarily committed mental patient who was injured when he jumped from a van driven by a state employee while being transferred from a state mental health center to a state group home); *Ridlen v. Four County Counseling Center*, 809 F.Supp. 1343 (N.D.Ind.1992) (claims on behalf of person who, while receiving outpatient mental treatment, killed himself); *Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459 (3d Cir.1990), *reh'g denied* (1991) (claims on behalf of resident of community living facility who choked to death while eating); *Jordan v. Tennessee*, 738 F.Supp. 258 (M.D.Tenn.1990) (claims on behalf of voluntarily committed mental patient who wandered away from his unit and drowned in a pond on the facility's grounds). Defendants contend that these cases stand for the proposition that where a state has not involuntarily committed a mental patient the state has not taken an affirmative act which would invoke the protections of substantive due process rights. Therefore, Defendants argue, as a general rule, no sub-

stantive due process claims may be brought on behalf of mental patients who were voluntarily committed.

The instant case is distinguishable from the cases cited above for at least two reasons. First, the patients in the instant cases are not alleged to have been harmed by themselves or other non-state actors. Instead, Plaintiffs contend that Shelby and Highsaw were affirmatively mistreated by state actors.[1] Defendants do not direct the Court to any cases in which voluntarily admitted mental patients have been held to have no substantive due process claim where the harm to the patient was allegedly caused by the affirmative mistreatment (i.e., deliberate indifference) of state actors. In such situations the *DeShaney* analysis becomes almost moot because the state action element of the plaintiff's claim is clearly established.

Second, even if the nature of a mental patient's commitment creates the patient's due process rights against mistreatment by a state actor, Defendants have not proven that the nature of Highsaw and Shelby's commitments was voluntary at the time of the alleged mistreatment. That is, even though Plaintiffs concede that the guardians of Highsaw and Shelby did initially voluntarily commit them to the state, the relevant inquiry must focus upon the actual circumstances of Plaintiffs' confinement.

The Seventh Circuit has acknowledged that it is possible for a commitment to be voluntary in name only:

> It is highly unlikely that a patient who is schizophrenic, mute, and severely depressed and out of touch with reality can simply walk out of a VA hospital on his own.... It is also unclear ... whether plaintiff's relatives either could have removed or were legally obligated as guardians to remove plaintiff from the VA hospital if they were dissatisfied with the treatment.... Thus it appears that plaintiff, though technically a "voluntary" patient, was a "de facto involuntary" patient because of his incompetence.

*Lojuk v. Quandt*, 706 F.2d 1456, 1466 (7th Cir.1983) (citations omitted). Several courts have since held, in applying *DeShaney*, that, depending on the nature of the specific conditions at issue, institutionalization which originated voluntarily may at some point involve restraint of personal liberty sufficient to trigger the protections of the due process clause. *See, e.g., Estate of Cassara v. Illinois*, 853 F.Supp. 273, 279 (N.D.Ill.1994); *United States v. Pennsylvania*, 832 F.Supp. 122, 124–25 (E.D.Pa.1993); *Wilson v. Formigoni*, 832 F.Supp. 1152, 1157 (N.D.Ill.1993), *rev'd on other grounds*, 42 F.3d 1060 (7th Cir. 1994);[2] *Halderman v. Pennhurst State School & Hosp.*, 784 F.Supp. 215, 222 (E.D.Pa.), *aff'd without opinion*, 977 F.2d 568 (3d Cir.1992).

> The nature of the discretion afforded state officials may be extensive because of the patient's voluntary act, but the court is not convinced that the discretion of state officials is wide enough to sanction the deliberate indifference to the patient's medical needs, or the patient's right to safe conditions, while the patient is incapacitated or restrained in the mental health facility.

*Estate of Cassara*, 853 F.Supp. at 279. Therefore, Plaintiffs' claims in the instant cases may not be rejected simply because their guardians signed voluntary commitment papers.

Defendants also argue that they are entitled to summary judgment on all claims relating to Highsaw because of the agreement her mother, Elizabeth Clark, signed at the time Highsaw was committed. On July 14, 1970, Elizabeth Clark completed and signed an "Application for Voluntary Admission to Central State Hospital" (the "Application"). The Application contains the following provision:

> I further agree that the person for whom admission is being sought will not hold the State of Indiana, CENTRAL STATE HOSPITAL, or any of its officers or employees, liable for any accident or injury

---

**1.** The Defendants do not make any arguments for purposes of the instant motions that they are not state actors.

**2.** The District Court's analysis of the substantive due process claims was not appealed; the Seventh Circuit was only reviewing the procedural due process claims.

occurring [sic] to said person as a voluntary patient in the hospital.

Defendants contend that this provision "effectively relinquished any right [on the part of Clark or Highsaw] to assert any future claim against CSH and its employees." Defendant Donahue's Memorandum in Support of Motion for Summary Judgment at 24.

■ Under Indiana law there is no general public policy against contracts containing exculpatory clauses. *Pinnacle Computer Serv., Inc. v. Ameritech Publishing, Inc.,* 642 N.E.2d 1011, 1014 (Ind.App.1994), *reh'g denied* (1995). Indiana case law has recognized the right of

> a party [to] contract out of his duty to exercise reasonable care with respect to the other party and thereby exonerate himself of liability to the other for negligence without offending the public policy of the state.

*Id.* (citing *Fresh Cut, Inc. v. Fazli,* 630 N.E.2d 575, 578 (Ind.App.), *reh'g denied* (1994)); *accord Marshall v. Blue Springs Corp.,* 641 N.E.2d 92, 95 (Ind.App.1994). However, there are public policy parameters for exculpatory clauses:

> Although no public policy exists to prevent contracts containing exculpatory clauses, some exceptions do exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public.

*Pinnacle,* 642 N.E.2d at 1014 (citing *General Bargain Ctr. v. Am. Alarm Co., Inc.,* 430 N.E.2d 407, 411–12 (Ind.App.1982)).

■ The claims at issue involve deliberate indifference, which is more than mere negligence. *See,* e.g., *Daniels v. Williams,* 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986); *Duane v. Lane,* 959 F.2d 673, 677 (7th Cir.1992) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Therefore, Defendants are, in essence, arguing that the Application should

be upheld as a release of their respective duties to act without deliberate indifference. Defendants point to no Indiana case law which upholds exculpatory clauses in such contexts. In fact, exculpatory clauses are generally not construed to cover anything more than mere negligence:

> On the basis either of common experience as to what is intended, or of public policy to discourage aggravated wrongs, such agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross, or to any conduct which constitutes an intentional tort.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 484 (5th ed. 1984) (citations omitted). Nothing in the Application itself indicates that it was intended to be extended beyond acts of mere negligence.

Even if there were no problems with the Application being extended to cover acts of deliberate indifference, the exculpatory clause would be voidable on the basis of other public policy concerns. Specifically, the clause is problematic because of the unequal bargaining power of the parties, the unconscionable nature of the agreement, and the public interest. The Application is a preprinted form agreement which was entered into in this case between CSH and a mother with a handicapped teenager who needed care.

> A contract will be held void as against public policy only where one party is at such a disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence [or other mistreatment].

*Pinnacle,* 642 N.E.2d at 1016 (citing *La-Frenz v. Lake County Fair Bd.,* 172 Ind.App. 389, 360 N.E.2d 605, 608 (1977)). Furthermore, public policy prevents exculpatory clauses in "situations where the indispensable need of one party for the services of another deprives the customer of all real equal bargaining power." *Id.* (citing *La-Frenz,* 360 N.E.2d at 608). These requirements are present here.[3]

---

**3.** Also, if interpreted as the Defendants urge, the

Application would amount to a guardian signing

III. Conclusion

For the reasons stated above, the summary judgment motions of Defendants James M. Donahue, M.D., Garner Johnson, Obie Turner, Ruth Stanley, and Paula Smith are denied.

It is so ORDERED.

away a child's right to further support from a party who would be otherwise obligated to provide it. The Indiana Supreme Court has held, albeit in the context of custody agreements, that it is contrary to public policy to allow a parent or guardian to foreclose a child's right to future support. *Straub v. B.M.T.*, 645 N.E.2d 597, 601 (Ind.1994); *see also Scott v. Pacific West Mountain Resort*, 119 Wash.2d 484, 834 P.2d 6, 10–11 (1992) (en banc) (under Washington law a parent does not have legal authority to waive a child's future cause of action for personal injuries resulting from a third party's negligence); *Hiett v. Lake Barcroft Community Ass'n*, 244 Va. 191, 418 S.E.2d 894, 897 (1992) (applying Virginia law, voiding as a matter of public policy a pre-injury release form signed as a condition of entering a race).