STATE of Indiana and Indiana State Highway Commission, Defendant-Appellants,

v.

DAILY EXPRESS, INC., Plaintiff-Appellee.

No. 1–983A303.

Court of Appeals of Indiana, First District.

July 5, 1984.

Rehearing Denied Aug. 14, 1984.

Linley E. Pearson, Atty. Gen., Bruce L. Kamplain, Deputy Atty. Gen., Indianapolis, for defendant-appellants.

Laura B. Worrell, Hall, Render, Killian, Heath & Lyman, Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellants, State of Indiana and the Indiana Highway Commission (Highway Commission), appeal an adverse judgment rendered by the Hancock Superior Court in favor of the plaintiff-appellee, Daily Express, Inc. (Daily Express), in its suit for damages. We reverse the judgment.

## STATEMENT OF FACTS

Daily Express, a Pennsylvania corporation involved in interstate transportation, applied for an oversize permit from the Highway Commission in order to operate an overheight truck on Indiana's highways. It applied via telephone, as opposed to completing a written application form, which conversation provided the measurements and weight of the vehicle and the proposed route to be taken through Indiana. The Highway Commission thereafter compared the proposed route with a posted bridge map which indicates the minimum clearance levels for all bridges. Daily Express's permit application and route choice were approved and an oversize permit was issued and transceived to a truck stop in Richmond, where it was picked up by the Daily Express driver upon his entrance into this state. The load being transported by Daily Express measured 14' 4½" high; the permit application was for a 14'5" high

load. The bridge at the intersection of I-465 and 82nd Street in Indianapolis, which was on the route taken by Daily Express, was 14'4" high at its lowest point, and was labeled as such on the posted bridge map. When Daily Express attempted to pass beneath the 82nd Street bridge, its load struck the bridge, came loose and struck an empty car carrier.

As a result of this accident, Daily Express incurred damages totaling $625.00. Daily Express also settled the claims of others injured through the accident in the amount of $47,135.26. The trial court awarded Daily Express a judgment against the State and the Highway Commission in the amount of $94,463.27, the sum of $47,-760.26 and $45,389.87 in prejudgment interest, plus costs.

## ISSUES

The State raises several issues, however, since the judgment must be vacated, we will discuss only two: whether the trial court erred in finding no indemnification agreement was in effect between the State and Daily Express, and whether the trial court erred in awarding court costs against the State.

## DISCUSSION AND DECISION

IND.CODE 9-8-1-16 grants the Highway Commission the authority to issue special permits for transporting oversize loads on Indiana highways when, in the discretion of the Commission, other traffic will not be seriously affected and the bridges and highways will not be seriously damaged by such loads. The permit may contain restrictions and conditions as deemed necessary by the Highway Commission for protection of the traffic, highways and bridges.

The Highway Commission developed form M-233-S, Rev. 11-73 (M-233-S), a written application for an oversize permit which it requires to be carried, along with the permit, with the oversize load while it is on Indiana highways. The front of M-233-S pertains to the description of the vehicle, load and route, the same informa-

tion provided through a telephone application. The back of M-233-S relates the conditions under which the permit is granted and includes a clause which reads:

"THE APPLICANT AGREES TO INDEMNIFY, DEFEND, EXCULPATE, AND HOLD HARMLESS THE STATE OF INDIANA, ITS OFFICIALS AND EMPLOYEES from any liability due to loss, damage, injuries, or other casualties of whatsoever kind, or by whomsoever caused, to the person or property of anyone on or off the right-of-way arising out of, or resulting from the issuance of this permit or the work connected therewith, or from the installation, existance, use, maintenance, condition, repairs, alteration, or removal of any equipment or material, whether due in whole or in part to the negligent acts or omissions (1) of the State, its officials, agents, or employees; or (2) of the applicant, his agents or employees, or other persons engaged in the performance of the work, or (3) the joint negligence of any of them: including any claims arising out of the Workmen's Compensation Act or any other law, ordinance, order, or decree. The applicant also agrees to pay all reasonable expenses and attorneys' fees incurred by or imposed on the State in connection herewith in the event that the application shall default under the provisions of this paragraph."

An identical indemnification agreement was approved by our supreme court as a reasonable safeguard to the State against liability caused by a utility's use of a right-of-way to perform excavations in the highway, in *Southern Indiana Gas and Electric Company v. Cornelison*, (1978) 269 Ind. 71, 378 N.E.2d 845. As the court explained in *Cornelison*, this clause renders the applicant strictly liable, *vis a vis* the State, for any liability caused by the work done under the permit.

The language of the clause here does obligate Daily Express to indemnify the State for liability resulting from the negligence of the State's own employees, however, Daily Express was not carrying M-

233–S when the accident occurred and had not signed such form in connection with the instant permit. Daily Express contends it therefore was not bound by the indemnification clause and is entitled to recover damages and the settlement amounts from the State, whose employee negligently approved the requested route under a bridge with inadequate clearance for Daily Express's load.

■ It is true the law in Indiana requires a written contract between the indemnitor and the indemnitee containing a clear and unequivocal provision stating the indemnitor has knowingly and willingly assumed the burden of indemnification for the indemnitee's negligence before such arrangement will be enforced. *Indiana State Highway Commission v. Thomas,* (1976) 169 Ind.App. 13, 346 N.E.2d 252. The indemnity clause in M–233–S is unambiguous and meets this state's standards. *Cf. State v. Thompson,* (1979) 179 Ind.App. 227, 385 N.E.2d 198. However, we must determine whether Daily Express agreed to the indemnification terms, since the form was not signed.

■ Indemnity agreements are governed by the law of contracts. *Zebrowski and Associates, Inc. v. City of Indianapolis,* (1983) Ind.App., 457 N.E.2d 259. The validity of a contract is not dependent upon the signature of the parties, unless such is made a condition of the agreement. 6 I.L.E. *Contracts* Sec. 53 (1958); *see Parrish v. Terre Haute Savings Bank,* (1982) Ind.App., 431 N.E.2d 132; *Seco Chemicals, Inc. v. Stewart,* (1976) 169 Ind.App. 624, 349 N.E.2d 733. This rule applies to contracts of indemnity. However, some form of assent to the terms is necessary. *See generally Hess v. Lackey,* (1921) 191 Ind. 107, 132 N.E. 257. Assent may be expressed by acts which manifest acceptance. *Herald Telephone v. Fatouros,* (1982) Ind. App., 431 N.E.2d 171.

■ In the present case, upon entering Indiana, Daily Express picked up its requested oversize permit which stated,

**"THIS PERMIT IS HEREBY GRANTED SUBJECT TO GENERAL PROVISIONS AND/OR SPECIAL PROVISIONS ON FORM M–233–S REV. 11–73 WHICH MUST BE CARRIED BY DRIVER WHILE MOVE IS BEING MADE",**

in bold print. Daily Express thereafter transported its oversize load on Indiana's highways. We agree with the Sixth Circuit Court of Appeals that such acts in accordance with the permit amount to acceptance by Daily Express of the terms and conditions of the permit. *Allied Steel and Conveyors, Inc. v. Ford Motor Company,* (6th Cir.1960) 277 F.2d 907. In *Allied Steel,* Ford entered into an agreement to purchase certain machinery from Allied, which stated:

"... the signing and returning to Buyer by Seller of the Acknowledgment Copy shall constitute acceptance by Seller of this Purchase Order and of all of its terms and conditions."

This contract contained a clause indemnifying Ford for any damage resulting from Allied's negligence. A more broad indemnification clause making Allied liable for the negligence of Ford was marked void. Eleven months later, Ford submitted an amendment to the contract proposing to purchase additional machinery to be installed by Allied. This amendment contained an acceptance clause similar to the contract term, but did not void the broad clause indemnifying Ford for its own negligence. Before Allied signed and returned its acknowledgement copy to Ford, it began work under the amendment and one of Allied's employees was injured as a result of the negligence of Ford's employees. The court held the acceptance clause stated only a suggested form of acceptance, and was not mandatory. Allied's performance under the amendment manifested its acceptance of the terms of that amendment. At this time the clause indemnifying Ford for its own negligence became binding upon Allied, not subsequently when the acknowledgement was signed and returned. Likewise, upon commencing to travel Indiana's highways with its oversize

load, Daily Express accepted the conditions stated in M–233–S, including the indemnification clause.

An even stronger case in favor of the Highway Commission is set out in *Westinghouse Electric Co. v. Murphy, Inc.*, (1967) 425 Pa. 166, 228 A.2d 656. Westinghouse and Murphy had a business relationship which spanned six years and included some 80 contracts whereby Murphy performed maintenance work at a Westinghouse facility. In connection with each job, Westinghouse issued a purchase order which stated it was subject to terms and conditions printed on the back of the form and those referred to in the form or attached thereto. One of the terms on the reverse side of the form stated that Appendix D would apply whenever Murphy employees performed work on Westinghouse's premises, whether or not Appendix D was attached. Appendix D indemnified Westinghouse for injuries to Murphy's employees, caused by Westinghouse's negligence. Appendix D was attached to six of the purchase orders between Murphy and Westinghouse, and on 22 others a notation stating *"APPENDIX D & S APPLY YOU HAVE COPIES"*, appeared. On most occasions Murphy would return an acknowledgement copy of the purchase order to Westinghouse before work was begun; however, expedience sometimes required that Murphy begin performance following oral negotiations with Westinghouse and before issuance of the purchase order.

On one such job, a Murphy employee was injured through the negligence of Westinghouse. The particular contract was made orally via telephone and work was begun by Murphy that day. A purchase order was then sent to Murphy by Westinghouse. No mention of Appendix D appeared on the order; however, the above quoted notation was typed on an attached sheet of specifications. The attached acknowledgement copy was not signed by Murphy or returned to Westinghouse on the particular job concerned. Murphy argued Appendix D was not included in its contract with Westinghouse; that it had not assented to the purchase order; and the specific terms

of its obligation had been fixed during the telephone confirmation and could not thereafter be amended without new consideration.

The Pennsylvania Supreme Court ruled otherwise, holding that Murphy's performance under the contract, acceptance of the purchase order's delivery without objection, and later reference to the order number when seeking compensation for its work amounted to acceptance of all the terms of the contract. The court stated:

"Especially if evidence of the contract is not an integrated document, and, moreover, one partly or wholly composed of oral communications, the precise content of which is not of record, courts must look to surrounding circumstances and the course of dealings between the parties, *Silverstein v. Hornick*, 376 Pa. 536, 103 A.2d 734 (1954), to ascertain the intention of the parties."

228 A.2d at 659.

In light of the history of the business relations between Murphy and Westinghouse, and the repetition of reference to Appendix D in their purchase orders, the court determined Murphy was on notice as to the contents of the indemnity provision. The court also dismissed Murphy's argument that it did not assent to the terms of the purchase order and Appendix D because of the lack of its signature on the acknowledgement form, stating:

"[I]f an indemnity agreement were set aside because of the possibility that the obligor has not consciously assented, the obligee would be deprived of his underlying right—one which, despite the absence of a signature directly related to the indemnity agreement, may have been bargained for in fact. Most importantly in this case, however, we believe that the prior course of dealings between the parties was sufficient to indicate that Murphy knew or should have known of the inclusion of Appendix D in its contract with Westinghouse. Against the factual circumstances present in this case, Murphy's acquiescence in this knowledge pre-

vents us from accepting its contention that it did not thereby consciously assent to having Appendix D apply to its contract with Westinghouse."

228 A.2d at 661.

We resolve this case accordingly. This was not the first Indiana oversize permit applied for and obtained by Daily Express. The record contains numerous pieces of correspondence to and from Daily Express which refer to Form M–233–S and the Highway Commission's insistence that it be followed. Therefore, Daily Express cannot be heard to say it was unaware of M–233–S and its contents. But for the fact the permit was applied for via telephone at the convenience of Daily Express, M–233–S would have been completed by Daily Express, as that form is the written application for an oversize permit. Nonetheless, the short form permit issued to Daily Express clearly stated it was granted subject to the terms and conditions of M–233–S. Having accepted delivery of it without complaint, Daily Express used this permit to its benefit in transporting the oversize load on Indiana's highways and thereby assented to its terms. The State and the Highway Commission are entitled to indemnification for their negligence in accordance with M–233–S.

Although we hold that Daily Express may not recover its damages and the settlement amounts paid by it, we emphasize that the circumstances of the present situation govern our decision. Daily Express, unlike the indemnitor in *Weaver v. American Oil Company,* (1971) 257 Ind. 458, 276 N.E.2d 144, was not overpowered by the bargaining strength of the Highway Commission. Only Daily Express stood to benefit from the issuance of an oversize permit. By asking for special permission to transport an extra tall load over Indiana roads, Daily Express agreed to be responsible for any injury arising out of its use of the roads. That such arrangement is contemplated by the legislature is seen in IND. CODE 9–8–1–16(d) and (e), the latter of which requires an applicant to assure the Highway Commission of his financial ability to respond in damages for injuries.

■ The trial court erred in assessing court costs against the State as part of the judgment in favor of Daily Express. The State and its agencies are not liable for ordinary court costs, as a matter of public policy. *State v. Ziliak,* Ind.App., 464 N.E.2d 929 (1984); *Indiana Department of Revenue v. American Underwriters, Inc.,* (1981) Ind.App., 429 N.E.2d 306; *State Department of Revenue v. American Motorists' Insurance Company,* (1979) Ind.App., 396 N.E.2d 907.

For the reasons stated above, the judgment against the State and the Highway Commission must be reversed in toto.

Judgment reversed.

ROBERTSON and RATLIFF, JJ., concur.