In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2387

DOROTHY BEAVER and STACY J. BEAVER,

Plaintiffs-Appellants,

v.

GRAND PRIX KARTING ASSOCIATION, INC.,
an Indiana corporation; and NATIONAL KART
NEWS, INC., an Indiana corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:96-CV-0140-AS--Allen Sharp, Judge.

Argued January 22, 2001--Decided March 30, 2001

Before BAUER, KANNE, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  The death last month of
race car legend Dale Earnhardt at the Daytona 500
was tragic, but not unpredictable. Indeed, the
sport of automobile racing is a hazardous
activity, and drivers on the NASCAR circuit know
very well that they risk life and limb every time
they get into a race. The same can be said,
though to a lesser degree, to be sure, of go kart
racers. As karts have become faster and more
maneuverable, the sport has matured from little
more than child's play to a rather dangerous
activity. Although the risks of negotiating a
race course at high speeds in a vehicle that
offers little protection seem obvious, organizers
of go kart races have adopted the practice of
requiring participants to sign a release flagging
those risks and waiving claims arising from
injuries sustained during a race. In this case we
confront the question of whether such a release
can be enforced against a racer who likely was
aware of the requirement that she execute it, but
somehow participated in the race without doing
so.

First, a little bit of background. In July of
1994, plaintiff Dorothy Beaver participated in
the annual Elkhart Grand Prix, a series of go
kart races held in Elkhart, Indiana. During the

event in which she drove, a piece of polyurethane foam padding used as a course barrier was torn from its base and ended up on the track. One portion of the padding struck Beaver in the head, and another portion was thrown into oncoming traffic, causing a multi-kart collision during which Beaver sustained severe injuries. In 1996 Beaver and her husband Stacy filed this diversity action against the race organizers (Grand Prix Karting Association, Inc., National Kart News, Inc., and Curt Paluzzi) and the manufacturers of the foam padding (Foamcraft, Inc. and, by later amendment, Foamex International, Inc. and Foamex L.P.) which the Beavers claimed was defective. The race organizers denied the material allegations of the complaint--which included counts alleging willful and wanton conduct, misrepresentation and concealment, and failure to warn--and asserted the affirmative defense that Beaver "executed a valid and proper release and indemnification agreement."

Much to the race organizers' chagrin, discovery revealed that the release upon which they relied was executed by Beaver prior to the 1993 Elkhart Grand Prix, a race in which she participated one year before her accident. A search for a release executed by Beaver for the 1994 race turned up nothing. Despite this major setback, the race organizers pressed on with a motion for summary judgment, arguing (1) the evidence demonstrated Beaver had executed a release applicable to the 1994 race (notwithstanding their inability to find it) and, (2) even if she had not executed such a release, her actions manifested her intention to be bound by its terms.

Either of the race organizers' arguments, if successful, would substantially relieve them of liability and obviate further proceedings on the merits of certain of Beaver's claims. But both arguments depended on disputed issues of fact and thus were inappropriate for resolution at the summary judgment stage. The district judge recognized this and, in a commendable effort to avoid wasting scarce judicial resources, empaneled a jury to resolve the limited issues of whether Beaver executed a release applicable to the 1994 race and, if not, whether her actions, combined with her knowledge that go kart events customarily require drivers to execute releases, indicated a willingness to be bound in any event.

At the trial, Beaver testified that she had participated in a number of go kart races since taking up the sport in 1985, that many of these races required her to execute a release in order to participate, and that she had never refused to sign one. Beaver acknowledged her signature on the release for the 1993 Elkhart Grand Prix but

could not remember executing a fresh copy at registration for the 1994 race. Although she participated in the 1994 race, and a photograph of her taken prior to the race shows her wearing a wristband she received at race registration, Beaver remembers nothing about the 1994 race due to the injuries she sustained.

Paluzzi, the race promoter, testified for the defense. He stated that all participants in the 1994 race were required to sign a release, identical to the one used in 1993, as part of the registration process. Paluzzi confirmed that Beaver had pre-registered and checked in at the race site. It was never brought to Paluzzi's attention that anyone refused to sign the release, and if anyone had done so, he or she would not have been permitted to race. Paluzzi admitted, however, that he had searched far and wide for Beaver's 1994 release before coming up dry. In addition, Paluzzi admitted that several race officials who entered a "restricted area" (i.e., the track, pit, and other potentially dangerous areas covered by the release) had not executed releases.

Paluzzi's testimony was corroborated by several other race officials who testified that race policy required a release and that they could conceive of no way a racer could complete registration without executing one. At least two of these individuals admitted that they did not sign releases themselves, however, despite the fact that they entered restricted areas. Finally, the race organizers called a host of witnesses who testified that in the dozens (or hundreds) of races in which they had participated, a release was always required.

Beaver's mother, father, and brother--all go kart racers themselves--testified by deposition. Although her mother could remember no race that did not require a release, her father and brother each named certain events that permitted drivers to race without executing a release. None of Beaver's family members had ever refused to sign a release when asked. In addition, an acquaintance of Beaver's named C.J. Van Dorn testified that he had gone to race-day registration with Beaver, and that neither she, her brother, nor Van Dorn had signed a release.

At the conclusion of the evidence, Judge Allen Sharp submitted two questions to the jury:

[1] Did Dorothy Beaver sign the "Release and Waiver of Liability and Indemnity Agreement" for the 1994 Elkhart Grand Prix?

[2] Did Dorothy Beaver, by her actions in

participating in the Elkhart Grand Prix, agree to the terms of the "Release and Waiver of Liability and Indemnity Agreement" for the 1994 Elkhart Grand Prix?

The jury answered "no" to the first question and "yes" to the second. Based on the jury's determination that Beaver had agreed to be bound by the terms of the release, the district court entered summary judgment in favor of the race organizers. Beaver appeals./1

Beaver raises a host of alleged errors committed by the district court, but her primary argument is that she may be bound by the release only if she expressly agreed to its terms. See Fresh Cut, Inc. v. Fazli, 630 N.E.2d 575, 578 (Ind. Ct. App. 1994) (stating in dicta that liability may be limited "by an exculpatory clause or an express agreement . . . to assume the risk") (emphasis added), vacated in part on other grounds, 650 N.E.2d 1126 (Ind. 1995). An express agreement, according to the sixth edition of Black's Law Dictionary, is one that is "[m]anifested by direct and appropriate language, as distinguished from that which is inferred from conduct." As the jury found (and the race organizers do not dispute on appeal), Beaver never executed a release applicable to the 1994 race. And there is no evidence that she ever orally indicated her assent to be bound by its terms. Accordingly, Beaver argues, the district court had no legal basis to submit the second interrogatory to the jury, and the jury's answer to that interrogatory must be vacated as a matter of law.

Notwithstanding the dicta in Fresh Cut implying that an exculpatory agreement is invalid absent an express agreement to its terms, Indiana courts repeatedly have held that assent to a contract-- and that, in essence, is what a release is--may be established by acts which manifest acceptance. In Herald Telephone v. Fatouros, 431 N.E.2d 171 (Ind. Ct. App. 1982), for example, the court held that the defendant newspaper had formed a contract to print an advertisement by accepting a proposed copy of the advertisement along with payment. Although the newspaper never expressly promised to print the advertisement, its actions unequivocally manifested its intent to accept the advertiser's offer to contract. Id. at 174-75. Such a "manifestation or expression of assent necessary to form a contract may be by work, act, or conduct which evinces the intention of the parties to contract." Calumet Motor Sales of Hammond, Inc. v. M.F. Cooper Builders, Inc., 221 N.E.2d 438, 440 (Ind. Ct. App. 1966) (quoting 17 Am. Jur. 2d Contracts sec. 20).

Release and indemnification agreements are

governed by the same rules as other contracts, Western Ohio Pizza, Inc. v. Clark Oil & Refining Corp., 704 N.E.2d 1086, 1091 (Ind. Ct. App. 1999) (release); Plumlee v. Monroe Guar. Ins. Co., 655 N.E.2d 350, 359 (Ind. Ct. App. 1995) (indemnification), including the rule that assent to the terms of a contract may be manifested by a party's actions. Indeed, the Indiana Supreme Court specifically has held on at least two occasions that "[a]ssent to a limitation of liability may be assumed where a knowledgeable party enters into the contract, aware of the limitation and its legal effect, without indicating non-acquiescence to those terms." Martin Rispens & Son v. Hall Farms, Inc., 621 N.E.2d 1078, 1087 (Ind. 1993) (citing Carr v. Hoosier Photo Supplies, Inc., 441 N.E.2d 450, 455 (Ind. 1982)). In State v. Daily Express, Inc., 465 N.E.2d 764 (Ind. Ct. App. 1984), a trucking company applied to the State Highway Commission for a permit to transport an oversize load on Indiana's roads. Because the company made its application over the telephone, it did not sign an indemnification agreement that was part of the written application. Id. at 766-67. Although the Highway Commission reviewed the truck's proposed route (including bridge clearances) in connection with granting the permit, the top of the truck struck the underside of a bridge, and third parties were injured in the accident. The trucking company settled claims brought against it by the third parties and then sought compensation from the state, arguing that it was not bound by the indemnification agreement because it was never formally executed. Observing that "[t]he validity of a contract is not dependent upon the signature of the parties, unless such is made a condition of the agreement," id. at 767, the Indiana Appellate Court held that the indemnification agreement was binding. Because the trucking company was aware of the terms of the agreement through its prior dealings with the Highway Commission, and nevertheless chose to use Indiana's roads without objection, it could not later be heard to disavow the indemnification clause. Id. at 769. Based on this reasoning, we cannot accept the proposition that the Elkhart Grand Prix release cannot bind Beaver absent her signature.

The question of whether assent to an exculpatory clause can be gleaned from a party's actions is generally a question of fact. It was here, and the second jury interrogatory was a perfectly proper way of resolving the disputed issue. Based on the evidence presented, the jury reasonably concluded that it is the custom and practice of the go kart industry, as well as the Elkhart Grand Prix, to require race participants to execute releases. The jury further reasonably

concluded that Beaver was well-aware of this requirement and chose to participate in the 1994 race anyway. Under Indiana law, these facts sufficiently establish Beaver's assent to the release.

Beaver also contends that the Indiana Statute of Frauds, Ind. Code sec. 32-2-1-1, bars enforcement of the release absent her signature. It is true that certain indemnity agreements are covered by the statute, and we'll assume that it also covers release clauses contained in the same contract as a covered indemnity provision. But in Henry C. Beck Co. v. Fort Wayne Structural Steel Co., 701 F.2d 1221, 1225-26 (7th Cir. 1983), we held that the statute applies only if the promise to indemnify is made by the third party directly to the creditor. For example, if Beaver (the third party) had promised another driver who was injured in the race (the creditor) to pay claims the other driver had against the race organizers (the debtors), the statute would require that the promise be written. Here, however, Beaver (the third party) promised the race organizers (the debtors) to indemnify them against claims made by other drivers (the creditors) against the race organizers. Because Beaver made her promise to indemnify to the debtors and not the creditors, the statute of frauds does not apply. See id.

Beaver next argues that the release cannot be enforced against her because it is unconscionable. A contract may be declared unconscionable if a great disparity in bargaining power leads the party with lesser power to enter a contract unwillingly. Pinnacle Computer Servs., Inc. v. Ameritech Publ'g, Inc., 642 N.E.2d 1011, 1017 (Ind. Ct. App. 1994). "In addition, the contract must be one that no sensible person not under delusion, duress or in distress would make, and one that no honest and fair person would accept." Id. Beaver does not argue that she lacked sense or suffered from delusion or duress when she agreed to the release prior to the 1993 Elkhart Grand Prix. Yet that release is identical to the one she now challenges as unconscionable. Moreover, nothing in our record suggests that the release at issue is substantively different from the myriad other releases executed by Beaver and other go kart enthusiasts each time they race. And it certainly does not shock the conscience that the organizers of a dangerous event would require an arm's-length exculpatory agreement from participants. In fact, it would strike us as odd indeed for promoters to not want to protect themselves if participants in a dangerous event like this suffer a mishap. The release here is anything but unconscionable.

In a parting shot at the release, Beaver asks

us to find it void because the race organizers misrepresented and/or concealed information relevant to the safety of the race course. Specifically, Beaver alleges that the race organizers concealed the fact that the foam padding used on the course was experimental and that its suitability as padding on a race course had not adequately been tested. Misrepresentations or concealments of fact in the context of an exculpatory contract render the contract void. See Fultz v. Cox, 574 N.E.2d 956, 959 (Ind. Ct. App. 1991); see also Cadek v. Great Lakes Dragaway, Inc., 58 F.3d 1209, 1213 (7th Cir. 1995) (applying Wisconsin law). But there is no evidence in the record that the race organizers ever made any representation about the foam padding or in any way attempted to conceal any aspect of the course. Not even Beaver's briefs on appeal set out any specific alleged misrepresentation or concealment. Accordingly, we will not reverse the district court's or the jury's findings with respect to the enforceability of the release.

The scope of the release--which of Beaver's claims it bars--is an entirely different inquiry, however. Beaver first asserts that even if the release precludes each of her claims, it cannot bar recovery by her husband for loss of consortium because he was not a party to the release agreement. There is a split of authority on the question of whether a spouse's claim for loss of consortium is viable in the face of a valid release by the spouse suffering the primary injury. Compare Hardy v. St. Clair, 739 A.2d 368, 372 (Me. 1999) (release executed by pit crew member does not bar wife's claim for loss of consortium); Bowen v. Kil-Kare, Inc., 585 N.E.2d 384, 392 (Ohio 1992) (release executed by race car driver does not bar wife's claim for loss of consortium); Huber v. Hovey, 501 N.W.2d 53, 57 (Iowa 1993) (release executed by spectator at race track does not bar wife's claim for loss of consortium) with Conradt v. Four Star Promotions, Inc., 728 P.2d 617, 621-22 (Wash. Ct. App. 1986) (release executed by race car driver bars wife's claim for loss of consortium); Hall v. Gardens Servs., Inc., 332 S.E.2d 3, 5 (Ga. Ct. App. 1985) (release executed by woman injured while riding horse bars husband's claim for loss of consortium)./2 "However, the more prevalent view seems to be that the loss of consortium suit is not barred as it is a separate and independent cause of action which is the property of the spouse and cannot be controlled by the injured person." Caroll J. Miller, Annotation, Injured Party's Release of Tortfeasor as Barring Spouse's Action for Loss of Consortium, 29 A.L.R. 4th 1200, 1201 (1984). Indiana sides with the majority of jurisdictions. See Rosander v. Copco

Steel & Eng'g Co., 429 N.E.2d 990, 991 (Ind. Ct. App. 1982); see also Board of Comm'rs of Cass County v. Nevitt, 448 N.E.2d 333, 341 (Ind. Ct. App. 1983) ("Where . . . an injured husband's recovery is prevented by a procedural bar unrelated to the merits of his claim, his claim should still be viewed as valid, for the purpose of supporting his wife's claim for loss of consortium."). Although we are not convinced of the wisdom of this rule, it is our job to apply Indiana law, not rewrite it. We therefore reinstate Stacy Beaver's claims based on loss of consortium./3

Beaver also asks us to reverse the district court's decision as it applies to her willful and wanton conduct claim. Although the release purports to free the race organizers from "all liability," courts have refused on public policy grounds to enforce exculpatory agreements when the claim at issue involves willful conduct. E.g., Downing v. United Auto Racing Ass'n, 570 N.E.2d 828, 836 (Ill. App. Ct. 1991) (refusing on public policy grounds to enforce release executed by pit crew member as to willful and wanton conduct claim against race track), abrogated on other grounds by Burke v. 12 Rothschild's Liquor Mart, Inc., 593 N.E.2d 522 (Ill. 1992). At least one Indiana court has recognized this rule, albeit in dicta, see LaFrenz v. Lake County Fair Board, 360 N.E.2d 605, 608 (Ind. Ct. App. 1977), and the race organizers point to no contrary authority. Although we consider it highly unlikely that Beaver could ever prove the race organizers acted willfully or wantonly, this question was not presented to the district court (or to us), as defendants' summary judgment motion focused exclusively on the release.

Finally, Beaver argues that a number of the judge's instructions to the jury misstated the law and that the court erred in refusing to give several of her proposed instructions. Given how we have resolved the issues presented, the complaint about the jury instructions need not be independently discussed.

In sum, we find a sufficient legal and factual basis to hold Beaver to the terms of the 1994 release. Because that release cannot bar her claim for willful and wanton conduct or her husband's recovery for loss of consortium, we reverse that part of the judgment and remand for further proceedings. In all other respects the district court's judgment is affirmed. Each side shall bear its own costs.

/1 This appeal involves only the claims against the race organizers. Although the district court's judgment for defendants initially included the

foam padding manufacturers, they were removed from the coverage of the judgment by a subsequent order of court. The district court's order further indicated that its judgment in favor of the race organizers was final and appealable, and a later order stated that there was no just reason for delay. We therefore have jurisdiction to hear this appeal.

/2 Appellees also cite Groves v. Firebird Raceway, Inc., 849 F. Supp. 1385, 1391-92 (D. Idaho 1994), in which the district court held that a release signed by a race car driver barred his wife's derivative claim for loss of consortium. Appellees did not inform us, however, that the Ninth Circuit reversed the decision of the district court in an unpublished order squarely on the proposition for which they cite it. See Groves v. Firebird Raceway, Inc., 1995 WL 574619 (9th Cir. Sept. 28, 1995). We mention this to remind counsel that they are obligated to thoroughly check each citation in their submissions to this court (and all other courts), and that a failure to do so can result in sanctions. See Kawitt v. United States, 842 F.2d 951, 954 (7th Cir. 1988).

/3 Our decision may have little practical effect, however, because Beaver agreed in the release to indemnify the race organizers for any liability they incur due to her participation in the race. Thus, any recovery by Beaver's husband will ultimately be paid by Beaver herself.