**NATIONWIDE INSURANCE COMPANY, Appellant,**

v.

**Frances A. HECK and Larry L. Heck, Appellees.**

**No. 29A04–0701–CV–28.**

Court of Appeals of Indiana.

Sept. 13, 2007.

Michael R. Bain, Beth A. Garrison, Hume Smith Geddes Green & Simmons,

LLP, Indianapolis, IN, Attorneys for Appellant.

Karl L. Mulvaney, Dennis F. Cantrell, Tara S. Lutes, Kent D. Zepick, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Nationwide Insurance Company ("Nationwide") appeals from the trial court's denial of its summary judgment motion and the court's grant of summary judgment in favor of Larry Heck ("Larry") on Nationwide's declaratory judgment action. Nationwide presents the following issues for our review:

1. Whether the trial court abused its discretion when it denied Nationwide's motion to strike the affidavit of Jeffrey Heck ("Jeffrey").

2. Whether the trial court erred when it concluded that Larry was entitled to summary judgment based on the doctrines of promissory estoppel and laches.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On July 18, 2001, Larry was driving an automobile ("the car") owned by his son, Jeffrey, on Interstate 70 near Dayton, Ohio, and Larry's wife, Frances Heck, was riding in the car as a passenger. Larry lost control of the car, crossed over the center median, and struck an oncoming semi-truck. As a result of that collision, Frances sustained serious bodily injuries and had to be transported by helicopter for emergency medical treatment. Thereafter, Frances underwent multiple surgeries and pain management treatment.

At the time of the accident, Jeffrey had an automobile insurance policy with Nationwide, and Larry had automobile insurance coverage through a policy with Chubb Insurance Company ("Chubb"). At some point after the accident, Frances spoke with Kevin Niles, an adjustor with Nationwide. And in July 2003, when the two-year statute of limitation was about to run on her personal injury claim, Niles contacted Frances to talk about her options. Niles told Frances that she "either need[ed] to file suit in Indiana in the next couple of days, file the case in Ohio which has a three (3) year statute of limitations, or let the claim die." Appellee's App. at 42.

After that conversation with Niles, Frances called her son, Jeffrey, who is an attorney. Thereafter, Jeffrey called Niles to discuss the matter. Niles told Jeffrey that "Ohio law would apply to Frances' claim, that Ohio law would allow Frances to file a lawsuit against her husband ... for negligence, and that Nationwide would pay for all damages that arose from Frances' injuries sustained in the accident." *Id.* at 45. Jeffrey stated that he would file a complaint on behalf of Frances that same day, July 18, 2003, if Niles agreed to the following: a stipulation that Ohio law applied; an admission by Nationwide that Larry, its insured as a permissive user of Jeffrey's car, was negligent; that the only issue to be determined was the amount of Frances' damages; that Nationwide's duty to file an answer to the complaint on behalf of Larry was stayed until further notice; and that Nationwide would not hire defense counsel for Larry until after that time.

Jeffrey memorialized his agreement with Niles in writing and sent it to him that same day. The letter read:

I am writing to confirm our conversation that we had this morning. We agreed to the following things:

1. Nationwide admits liability as the insurer on behalf of Larry Heck under Ohio law including loss of consortium and intra-spousal claims.

2. The only issue to be resolved yet is the amount of damages arising from the various personal injury special damages and the resulting consequential/derivative damages.

3. I will file the lawsuit immediately in Hamilton County, Indiana.

4. The Defendant's *Answer* deadline is stipulated by both parties to be extended until one party notifies the other, and at that point the 20–day clock runs.

5. You will not hire defending counsel for Dad until the *Answer* clock begins to run.

6. You will forward to me any documentation on medical bills that you receive from Anthem or that you have previously received from any other medical or allied health provider for both parties.

7. I will forward to you similar documentation once I have reviewed what material is out there and gotten my bearings in this matter.

8. You and I will communicate regularly to minimize misunderstandings and to expedite resolution of this matter.

Please advise me in writing in the next ten (10) days if I have misunderstood our agreement in any way or you wish to clarify the details of our understanding. Otherwise, I will act according to the terms of this understanding.

Please contact me with any questions. I look forward to talking to you soon.

*Id.* at 52 (emphases original). Jeffrey filed a complaint on Frances' behalf against Larry alleging negligence and seeking damages for her personal injuries. Jeffrey and Frances informed Larry of the agreement with Niles and that the complaint had been filed.

Several months later, Niles e-mailed Jeffrey to say that he had never received a copy of Frances' complaint, and Niles also asked to be updated regarding Frances' medical expenses. Jeffrey sent a copy of the complaint to Niles both by e-mail and regular mail. Thereafter, Jeffrey and Niles communicated regarding Frances' ongoing medical treatment. The following correspondence by e-mail occurred between October 2004 and July 2005:

NILES (10/11/04): [Subject: Re: Proposed protocol for payment] Jeff, this [is] a quick follow up regarding the itemization of the medical bills paid thru Anthem. Do you have anything from them yet[?] I will need all medical bills incurred by Frances as well as medical records with diagnosis and active treatment information.

Thanks for your help on this claim.

JEFFREY (10/12/04): Funny you should ask. I dropped Anthem's transcript in the mail to you yesterday. Given the holiday, it may still be in the drop box. Let me know if you don't get it by Thursday.

NILES (10/13/04): Thanks Jeff. Is Frances fully recovered at this time? If so, do you have any thoughts on what in the way of a settlement Frances is looking for on this claim? If not, is there an anticipated time when she will be fully recovered?

JEFFREY (10/13/04): She is not fully recovered. I rather doubt that full recovery will ever be possible. As the transcript I sent you quietly hints, she is still undergoing treatment directly related to the accident. She is still taking Oxycontin and regularly visiting a pain management clinic for injections and

other treatments. She has traveled to NYC to have a plastic surgeon reconstruct her thigh due to adema (sp?). We are looking for limits on the claim to Nationwide and considering claims against additional insurers for the sums over and above limits.

Even having said that, I would need to turn to her physicians for estimates of recovery. What are your thoughts?

NILES (2/22/05): I apologize that I was not able to complete the evaluation of Mrs. Heck's claim at this time, however given the nature of Mrs. Heck's injuries and the fact that it is apparent she is not completely recovered from all of her injuries or there might be some permanency, it is necessary for me to obtain copies of all medical treatment records relating to her injuries. I am mailing a medical authorization form to you, in the event you wish for Nationwide to request and pay for these records. If you choose to order the records, we will need to see records from any medical provider that she consulted with or treated with since the July 18, 2001 auto accident.

Once this information is received the medical coordinator will review it and then I will complete the evaluation process and obtain authority to make an offer to resolve this claim.

Please note that no evaluation can be completed or offers be made without this information.

Thank you for your attention to this matter.

JEFFREY (3/21/05): I just left a voice mail for Lance Oliver to inquire about the status of the medical transcript.

Did you get the CD–ROM that I sent you? If so, was it helpful? Would it help for me to

1. Make it text searchable?

2. Give you a list of doctors and practices to answer your question about "Who are all these doctors?"

3. Reorganize it for settlement brochure purposes?

Let me know. I will be with Frances most of the next 2 weeks, so I will be able to move some aspects of this a little bit.

NILES (7/5/05): This e-mail confirms our conversation this afternoon and the [action] plan for resolution of Frances' claim.

You will continue efforts to obtain all itemized bills and medical records from Dr. Gary Wright and begin requesting bills and treatment records/notes from all other providers. Please note I already have records and bills from Miami Valley Hosp and Lee Memorial Hosp, and bills from Bonita Comm Hosp.

Please forward the above documentation as you receive it.

Thanks.

Appellee's App. at 57–63. At no time did Niles state or imply that coverage was an issue. Jeffrey kept both Frances and Larry apprised of his ongoing negotiations with Niles.

Then on November 3, 2005, someone from Nationwide contacted Frances to tell her that the matter had been referred to "outside counsel." *Id.* at 65. When Jeffrey was notified, he e-mailed Niles, stating "What the hell is going on?" *Id.* Niles responded that "a letter was mailed to your home address on 11/1/05 advising you of Nationwide Insurance's current position and actions. I must refer you to that letter for explanation." *Id.* That letter notified Jeffrey that Nationwide was denying coverage for Frances' damages. Prior to receipt of that letter, none of the parties had been notified that Nationwide was proceeding under a reservation of rights.

On November 22, 2005, Nationwide filed a motion to intervene in Frances' action against Larry, and the trial court granted that motion. On January 13, 2006, Nationwide filed its Answer and Crossclaim for Declaratory Judgment against Larry and Counterclaim against Frances. In its Cross/Counterclaim, Nationwide alleged that it had no duty to provide coverage for Frances' injuries in light of the household exclusion provision in the applicable policy. On June 27, Nationwide filed a motion for summary judgment on its crossclaim against Larry alleging that it had no duty to defend Larry under the applicable policy as a matter of law. Larry responded to that motion and filed his own motion for summary judgment on Nationwide's declaratory judgment action. Larry designated an affidavit submitted by Jeffrey as evidence in support of his summary judgment motion. Nationwide moved to strike the affidavit, but the trial court denied that motion and permitted the affidavit. Following a hearing, the trial court denied Nationwide's summary judgment motion and entered summary judgment in favor of Larry on his motion. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Motion to Strike

■ Nationwide first contends that the trial court abused its discretion when it denied its motion to strike Jeffrey's affidavit from Larry's designation of evidence. To overturn the denial of a motion to strike, a trial court must have committed an abuse of discretion. *McCutchan v. Blanck*, 846 N.E.2d 256, 260 (Ind.Ct.App. 2006). We will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and the circumstances before the trial court. *Id.*

Nationwide maintains that the trial court should have stricken Jeffrey's affidavit "due to the undeniable conflict of interest he created." Brief of Appellant at 12. In particular, Nationwide states, "[a]t the time he verified the Affidavit, he was representing his mother (i.e. the Plaintiff) and also supporting his father (i.e. the Defendant) as a necessary witness." *Id.* at 13. Nationwide contends that Jeffrey violated Rule of Professional Conduct 3.7, which provides in relevant part:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Nationwide asserts that Jeffrey's violation of the rule was grounds for striking the affidavit. But Nationwide does not direct us to any authority to support that contention.

■ Regardless, we need not determine whether Jeffrey's affidavit violated Rule 3.7. First, Jeffrey withdrew his representation of Frances at the summary judgment hearing. Second, as the Preamble to the Rules of Professional Conduct states, "[t]he fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." Nationwide has not demonstrated that, assuming Jeffrey's affidavit violated Rule 3.7, that violation required the trial court to grant its motion to strike. Nationwide does not contend that the affidavit is deficient in any substantive way. We hold that the trial court did not

abuse its discretion when it denied Nationwide's motion to strike the affidavit.

### Issue Two: Summary Judgment

Nationwide also contends that the trial court erred when it denied its summary judgment motion and granted Larry's summary judgment motion on its declaratory judgment action. When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct.App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. Am. Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App.2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

■ The trial court entered findings and conclusions in support of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

The trial court concluded that Larry was entitled to summary judgment on Nationwide's declaratory judgment action under the doctrines of promissory estoppel and laches. But our review of the designated evidence shows that Larry was entitled to summary judgment because Nationwide entered into an agreement whereby it accepted liability for Frances' damages. Because a legal remedy is available, we need not invoke principles of equity here. *See e.g., Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1178 (Ind.Ct.App.2006) (stating "our courts usually will not exercise equitable powers when an adequate remedy at law exists."), *trans. denied.*

■ While there is no written agreement signed by the parties, the validity of a contract is not dependent upon the signature of the parties, unless such is made a condition of the agreement. *State v. Daily Express, Inc.*, 465 N.E.2d 764, 767 (Ind.Ct.App.1984). However, some form of assent to the terms is necessary. *Id.* Assent may be expressed by acts which manifest acceptance. *Id.*

■ Here, the undisputed designated evidence shows that on July 18, 2003, Jeffrey and Niles entered into an agreement whereby Nationwide accepted liability on behalf of Larry, agreed that Ohio law would apply to the matter, and agreed that the only issue to be resolved was the amount of Frances' damages. There is no evidence that the signature of the parties was a condition of the agreement. *See id.* On appeal, Nationwide disputes that it ever entered into such an agreement, but the conduct of its agent, Niles, over the course of twenty-eight months demonstrates, as a matter of law, that there was such an agreement.[1] *See id.* Indeed,

---

1. At the very least, a contract implied in fact arose. A contract implied in fact refers to the class of obligations which arises from mutual agreement and intent to promise, when the

none of the evidence Nationwide designated in support of summary judgment or in opposition to Larry's summary judgment motion contradicts that such an agreement existed.[2] Given the unambiguous terms of the parties' agreement, Nationwide's contention now that Larry is not covered under the policy is not well-taken. The trial court did not err when it denied Nationwide's summary judgment motion and granted summary judgment for Larry.

Affirmed.[3]

MATHIAS, J., and BRADFORD, J., concur.

agreement and promise have simply not been expressed in words. *McCart v. Chief Executive Officer in Charge, Independent Federal Credit Union,* 652 N.E.2d 80, 85 (Ind.Ct.App. 1995) (citing *City of Indianapolis v. Twin Lakes Enters., Inc.,* 568 N.E.2d 1073, 1078 (Ind.Ct.App.1991), *trans. denied;* Williston on Contracts § 1.5 at 20 (1990)), *trans. denied.* Unlike implied in law or quasi-contracts, which do not arise from the parties' express agreement but which are implied by law to remedy a party's wrongful enrichment, a contract implied in fact arises out of acts and conduct of the parties, coupled with a meeting of the minds and a clear intent of the parties in the agreement. *Id.*

2. Nationwide did not submit an affidavit from Niles. And there is no evidence showing that Nationwide was negotiating under a reservation of rights during that twenty-eight months.

3. We deny Larry's request for appellate attorney's fees under Indiana Appellate Rule 66(E). While Nationwide's initial brief and appendix were deficient in numerous ways, those deficiencies do not warrant sanction, and Nationwide has filed a supplemental appendix.